897 F.Supp. 1224 (1995)
Samuel Lee MCDONALD, Petitioner,
v.
Paul DELO, Respondent.
No. 89-1282C(8)
United States District Court, E.D. Missouri, Eastern Division.
August 11, 1995.
*1225 *1226 *1227 *1228 *1229 *1230 *1231 *1232 *1233 Richard H. Sindel, Vice-President, Sindel and Sindel, Michael A. Gross, Cheryl A. Rafert, St. Louis, MO, for petitioner Samuel Lee McDonald.
Stephen Hawke, Attorney General of Missouri, Bill Thompson, Assistant Attorney General, Missouri Supreme Court, Jefferson City, MO, for respondent Paul Delo.

ORDER
STOHR, District Judge.

I. INTRODUCTION
This matter is before the Court on the petition of Missouri State prisoner Samuel Lee McDonald, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in the Circuit Court of the City of St. Louis on one count of capital murder, R.S.Mo. § 565.020, and a sentence of death, R.S.Mo. §§ 565.006-.008. After exhausting his available state law remedies, either by fairly presenting his claims to the Missouri courts or because he is now procedurally barred from doing so, petitioner initiated this action. In his petition, Mr. McDonald asserts eighteen grounds for relief with several subparts to many of those grounds. The petition was filed July 7, 1989 and assigned to the Honorable Clyde S. Cahill. Judge Cahill subsequently assumed senior status, and the matter was reassigned to the Honorable George F. Gunn. Judge Gunn recused himself, and the matter was transferred to this Court on October 18, 1993.

II. PROCEDURAL BACKGROUND
Petitioner was arrested on May 17, 1981 and charged with the capital murder of Robert Jordan, an off-duty St. Louis County police officer. On February 24, 1982, following eight days of trial, a jury found petitioner guilty of murder, and based on its finding that petitioner committed the murder "for the purpose of receiving money or other thing of monetary value by taking [Jordan's] wallet," the jury recommended that petitioner be sentenced to death. See Resp.Exh. B, p. 210.
Petitioner filed a motion for a new trial on March 19, 1982, asserting nine grounds for relief. Resp.Exh. B, pp. 153-201. The motion was denied on May 17, 1982, and petitioner sentenced to death. Resp.Exh. B, p. 91. Subsequently, a warrant of execution was issued. Resp.Exh. B, pp. 86-87.
Petitioner appealed his conviction and sentence to the Supreme Court of Missouri. Resp.Exh. B, p. 81. On November 22, 1983, the Missouri Supreme Court affirmed petitioner's conviction and sentence. State v. McDonald, 661 S.W.2d 497 (Mo. banc 1983), cert. denied, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). Petitioner then filed a pro se motion for post-conviction relief, pursuant to Missouri Supreme Court Rule 27.26,[1] on May 2, 1985. Resp.Exh. F, pp. 30-39. That motion was amended at least twice, on July 17, 1986 and October 23, 1986, with the assistance of appointed counsel. See Resp.Exh. F, pp. 23-29. The amended motion incorporates by reference petitioner's original pro se motion and the subsequent amendments.
In its amended form, petitioner's 27.26 motion contains thirty-two claims of ineffective assistance of trial counsel. See Resp.Exh. F, pp. 24-39. See Amended 27.26 Motion, Resp. Exh. F, pp. 24-39. On October 3, 1986, the Circuit Court held an evidentiary hearing with regard to the grounds asserted in petitioner's 27.26 motion (the "27.26 court"). See generally Resp.Exh. G. Ultimately, on January 20, 1987, the Circuit Court issued findings of fact and conclusions of law and denied petitioner's amended 27.26 motion. See Resp.Exh. F, pp. 12-22. Petitioner appealed the denial of his 27.26 motion. Resp.Exh. F, p. 11.[2] The Missouri Court of Appeals affirmed *1234 the judgment of the Circuit Court denying petitioner relief on his 27.26 motion. McDonald v. State, 758 S.W.2d 101 (Mo.App. 1988). Motions for rehearing and for transfer to the Missouri Supreme Court were denied August 31, 1988 and October 18, 1988 respectively. Petitioner then filed the instant petition.

III. FACTS
The facts of this case are as follows. At approximately 11:00 p.m. on May 16, 1981, the victim, Robert Jordan, and his eleven year-old daughter, Rochelle Jordan, entered the Forest Package Liquor Store, which was located at 4401 Shreve Avenue, in the City of St. Louis. As an off-duty St. Louis County police officer, the victim was required to carry a concealed firearm at all times. Resp. Exh. A-1, p. 714. That evening, the victim carried his weapon, as well as a wallet containing his police badge. Resp.Exh. A-1, p. 715. The victim and his daughter entered the store, purchased some snacks, and proceeded to leave.
At the same time, Stanley Hunter was on his way to the Forest Package Liquor Store when he passed a man, later identified as petitioner, standing to the side of the store. Resp.Exh. A-2, pp. 857-59, 863, 869-70. At approximately the same time, Archie White, who also later identified petitioner, was entering the Babysitter's Lounge, located across the street from the liquor store. Resp.Exh. A-1, pp. 726, 728, and 734-35.
As the victim left the store and walked to his car, he was accosted by petitioner. The victim's daughter testified later that from the doorway of the liquor store she saw a man, who she could not identify, approach her father. Resp.Exh. A-2, pp. 1014-15. Then Archie White and Stanley Hunter both heard a shot. Resp.Exh. A-1 & A-2, pp. 730-31, 861. They each turned to look, and they saw the victim on his knees with petitioner standing in front of him. Resp.Exh. A-1 & A-2, pp. 730-31, 862-63. The victim handed petitioner his wallet. Resp.Exh. A-1 & A-2, pp. 733, 863-64, 1015. Petitioner turned and started to walk away. Resp.Exh. A-1 & A-2, pp. 733, 866-66.
From her vantage point inside the door to the store, the victim's daughter was able to see her father's badge in the wallet as petitioner opened the wallet and turned away from the victim. Resp.Exh. A-2, p. 1016. Hunter did not see petitioner open the wallet, Resp.Exh. A-1, p. 879, but Mr. Hunter and Rochelle Jordan both testified that the petitioner turned back toward the victim and shot him through the chest, mortally wounding him. Resp.Exh. A-1 & A-2, pp. 735-37, 1017. However, the victim was able to return fire, striking petitioner three times. Resp.Exh. A-1 & A-2, pp. 737, 1017.
Petitioner was able to stagger back to his vehicle, which was occupied by Ms. Jacqueline Blue, and the two fled the scene. Eventually, Ms. Blue drove petitioner to a Veterans Administration Hospital. Resp.Exh. A-2, 2, p. 959. During the ride to the hospital, petitioner changed his shirt, discarding the blood-soaked shirt in a sewer. Resp.Exh. A-2, 2, p. 957.
Police officers responded to the Veterans Administration ("VA") Hospital, where Ms. Blue advised officers of the location of her vehicle and gave them the keys. Resp.Exh. A-2, pp. 811 & 973. Offices went to the parking lot and examined the vehicle. Through the open rear window, officers observed the victim's wallet with his badge protruding out. Resp.Exh. A-2, p. 814. An evidence team then examined the entire vehicle and recovered a jacket worn by petitioner during the commission of the crime and a gun. Resp.Exh. A-2, pp. 814. Ballistics tests failed to conclusively indicate whether the bullets which struck the victim were fired from the weapon recovered from the car parked at the VA Hospital. However, ballistics did confirm that bullet fragments recovered from the liquor store parking lot were fired from the same weapon which police officers recovered from the trunk of the vehicle. With information obtained from Ms. Blue, officers also recovered from the sewer the blood-soaked shirt petitioner had been wearing after he was shot by the victim. Resp.Exh. A-1 & A-2, pp. 771 & 975. Witnesses White and Hunter were both taken to the VA Hospital, where they identified petitioner *1235 as the man who shot Robert Jordan. Resp.Exh. A-1 & A-2, pp. 742-43, 868-71.

IV. EVIDENTIARY HEARING
By order dated December 1, 1992, the Honorable Clyde S. Cahill granted petitioner's request for an evidentiary hearing on two specific issues: "(a) denial of petitioner's motion for psychiatric examination, and (b) the statutory aggravating circumstance." Petitioner then sought leave to present additional issues at the evidentiary hearing. However, subsequent to the order granting the hearing and before a ruling on petitioner's request to submit additional issues for hearing, the case was transferred to Judge Gunn. After Judge Gunn recused himself, this Court received the file, conducted a careful review, and ordered the parties to file a brief memorandum setting forth their respective positions with respect to the necessity of an evidentiary hearing.
In response to this Court's March 10, 1995 order, petitioner asserts that the principle issue requiring hearing involves the alleged "failure of trial counsel to adduce exculpatory evidence of petitioner's psychiatric disorder." Petitioner's Memorandum, filed March 27, 1995, p. 2. In contrast, respondent asserts various reasons why each of petitioner's grounds can be disposed of based on the record currently before the Court.
An evidentiary hearing on habeas petition is mandatory only if a petitioner was denied a "full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). In Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), the Supreme Court clarified the appropriate standard to be applied by the district court in considering the necessity of an evidentiary hearing on a habeas petition. To be entitled to an evidentiary hearing, the Supreme Court held that the party seeking the hearing must show cause for his failure to develop the facts in the state-court proceedings and actual prejudice resulting from the failure. Keeney, 504 U.S. at 11-13, 112 S.Ct. at 1721. Following the United States Supreme Court's decision in Keeney, issued after Judge Cahill's order, the Eighth Circuit set forth the standards to apply in considering the necessity of an evidentiary hearing in the context of a habeas petition:
Now, under Keeney, in order for a petitioner to be entitled to an evidentiary hearing in federal district court, petitioner must show both cause for his failure to adequately develop the facts material to his [claims] in the postconviction state court hearing and actual prejudice resulting therefrom; alternatively, petitioner must show that a fundamental miscarriage of justice would result from the denial of an evidentiary hearing in federal court. Id. [at 9-13, 112 S.Ct] at 1720-21. In order for us to find that a fundamental miscarriage of justice would result from denial of an evidentiary hearing in federal court, petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 [106 S.Ct. 2639, 2649, 91 L.Ed.2d 397] (1986).
McCann v. Armontrout, 973 F.2d 655, 658 (8th Cir.1992). However, this Court need not hold an evidentiary hearing if petitioner fails to allege facts sufficient to justify habeas relief. Townsend, 372 U.S. at 312, 83 S.Ct. at 756-57.
The issue before the Court is whether petitioner is entitled to an evidentiary hearing on his claim that he was denied the effective assistance of counsel because his trial counsel failed to adequately investigate and assert petitioner's alleged mental defect as part of the defense. Specifically, petitioner argues that "competent trial counsel would have presented a jury with evidence explaining the nature and consequence of post-traumatic stress disorder." Further, petitioner suggests that there is "new evidence" concerning post-traumatic stress disorder, which might compel a jury to reach a different result.
Applying the most recent standards set out by the Eighth Circuit, the Court finds that petitioner fails to demonstrate cause and prejudice resulting from his failure to adequately *1236 develop the facts relevant to this ground at the state court hearing on his 27.26 motion, and thus he is not entitled to an evidentiary hearing with regard to this claim. Keeney, 504 U.S. at 7-9, 112 S.Ct. at 1719. Petitioner fails to establish cause because he has not alleged that "some objective factor external to the defense" impeded his efforts, during the hearing on his 27.26 motion, to adduce evidence concerning the alleged ineffectiveness of his trial counsel's representation. McCleskey v. Zant, 499 U.S. 467, 493-94, 111 S.Ct. 1454, 1469-70, 113 L.Ed.2d 517 (1991) (applying cause and prejudice analysis in abuse of writ case), cited in Keeney, 504 U.S. at 11-13, 112 S.Ct. at 1721.
Additionally, petitioner has failed to show actual prejudice that infected his entire trial with error of a constitutional magnitude. United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). Presumably in an effort to demonstrate prejudice, petitioner argues that "new evidence which was not presented at trial probably would have caused reasonable jurors to find [petitioner] not guilty of the offense charged." Petitioner's Memorandum, filed March 27, 1995, p. 2. However, this contention is not relevant. The existence of "new evidence" has no bearing on why petitioner failed to present evidence to the 27.26 court concerning the adequacy of his trial counsel's representation, much less that he was prejudiced as a consequence of that failure. Absent a showing of cause and prejudice, the Court will vacate that portion of Judge Cahill's order granting an evidentiary hearing on this claim of ineffective assistance of counsel and instead deny petitioner's request for a hearing.
With regard to that portion of Judge Cahill's order granting petitioner an evidentiary hearing on "the statutory aggravating circumstance," petitioner does not address that issue in his response to the Court's March 10 order. Thus, the Court presumes that petitioner has abandoned the need for a hearing on that ground. Further, Judge Cahill's order does not indicate what evidence he contemplated hearing on that issue, and this Court does not find any basis for requiring additional evidence related to that issue. Therefore, the Court will also vacate that portion of Judge Cahill's order granting petitioner an evidentiary hearing on "the aggravating circumstance," and instead deny petitioner a hearing on this claim.
For these reasons, the order of Judge Cahill granting petitioner's request for an evidentiary hearing will be vacated and petitioner's motion for such a hearing denied. The Court thus turns to a consideration of the various grounds asserted in petitioner's first amended petition.

V. ANALYSIS
A federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules. Gilmore v. Armontrout, 861 F.2d 1061, 1065 (8th Cir.1988), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). This requirement implicates both the question of whether petitioner has exhausted all remedies available in the state court (i.e. the exhaustion requirement), and whether he has preserved his claims for federal habeas corpus review by complying with state procedural rules governing their presentation (i.e. the procedural default inquiry). Id. The question of whether a claim is procedurally barred is distinct from the inquiry concerning whether a claim has been exhausted. Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir.1992). However, a federal court may entertain a claim which has been procedurally defaulted in the state courts, if petitioner demonstrates adequate cause to excuse his state court default, as well as resulting prejudice from the default, or shows that a fundamental miscarriage of justice would occur if the federal court declined to consider his claims. Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977). Failure to satisfy the procedural default analysis mandates rejection of that particular ground. Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

*1237 A. GROUND I: Denial of Motions for Psychiatric Exam
In his first ground for relief, petitioner claims that the trial court's denial of his four motions for appointment of a psychiatrist violated his Fifth,[3] Eighth[4] and Fourteenth[5] Amendment rights.[6] Specifically petitioner claims that he was entitled to a mental examination to determine his mental state at the time of the crime, his mental fitness to stand trial, and circumstances relating to his mental health which might mitigate punishment. Amended Petition, ¶¶ 46 & 50. This Ground was asserted on direct appeal, see Resp.Exh. C, p. 7, and in petitioner's 27.26 motion. See Resp.Exh. F, p. 34.
On June 22, 1981, petitioner's appointed counsel filed a "Motion for Appointment of Psychiatrist." Resp.Exh. B, pp. 609-10. The motion was called for hearing on July 1, 1981 and denied at that time. Resp.Exh. B, pp. 608 & 598. There is no indication that petitioner's trial counsel offered any evidence in support of the motion. On July 13, 1981, petitioner's counsel filed a "Renewed Motion for the Appointment of a Psychiatrist." Resp.Exh. B, pp. 591-93. The renewed motion was originally set for hearing on July 29, 1981 but was continued to August 12, 1981. Resp.Exh. B, pp. 590 & 589. On August 12, 1981, the second motion was denied without prejudice. Resp.Exh. B, p. 588. On January 25, 1982, petitioner filed a third motion relating to a mental examination, which was denied on its face by the trial judge during the preliminary hearing on January 29, 1982. Resp.Exh. B, p. 468; Resp.Exh. A-1, pp. 14, 207. Finally, a fourth motion for appointment of a psychiatrist was made on February 16, 1982. Resp.Exh. B, pp. 365-68. The trial judge denied this fourth motion on its face just prior to the commencement of the trial on February 16, 1982. Resp.Exh. A-1, p. 248.
In Ake v. Oklahoma, the United States Supreme Court held that denial of an indigent defendant's request for a psychiatric evaluation violates due process "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985). The Eighth Circuit has indicated that in order to establish that an expert is necessary, a defendant must demonstrate a reasonable probability that the requested expert would aid in the defendant's defense and that the denial of expert assistance would result in an unfair trial. United States v. Saint John, 851 F.2d 1096, 1098 (8th Cir.1988); Little v. Armontrout, 835 F.2d 1240, 1244 (8th Cir.1987) (en banc) (requiring more than mere possibility of assistance from expert), cert. denied, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). This Court assumes without deciding that a defendant charged with a capital murder has a similar due process right to expert assistance if his mental state is to be a "significant factor" at either the guilt or sentencing phases of trial. Cf. Guinan v. Armontrout, 909 F.2d 1224, 1227 (8th Cir.1990).
Applying the above standard to the facts of this case, the Court concludes that this claim provides no basis for habeas relief because petitioner failed to demonstrate to the trial court that his mental state was likely to be a significant factor at trial or at sentencing. Petitioner argues that this first motion, pertaining to his mental health at the time of the commission of the crime and at the time of trial, should have been "granted as a matter of right because it was accompanied by written *1238 notice sufficient to inform the prosecution of his intent to rely on the defense of mental disease or defect...." Amended Petition, ¶¶s 47 & 48. Presumably, petitioner is challenging the propriety of the trial court's application of R.S.Mo. § 552.030, which governs the assertion of a mental health defense and the appointment of a psychiatrist. The trial court's application of Missouri law fails to implicate any constitutional issue which might entitle petitioner to habeas relief, thus to the extent petitioner is asserting trial court error in support of this claim, the Court will reject that argument. Cf. Ricketts v. Adamson, 483 U.S. 1, 5-7 n. 3, 107 S.Ct. 2680, 2683-84 n. 3, 97 L.Ed.2d 1 (1989) (in federal habeas proceedings, the federal court is bound by state court interpretation of state law).
Petitioner also challenges the denial of the three remaining motions for a psychiatric examination, as that issue pertains to his competency at the time of the commission of the crime and at the time of trial and as that issue pertains to sentencing mitigation. Amended Petition, ¶¶s 48 & 50-53. Petitioner claims that the denial of the last three motions for appointment of a psychiatrist violated his Eighth and Fourteenth Amendment rights.[7] In his second motion, counsel stated that without a psychiatric examination of petitioner, she is "unable to determine whether or not the defense of mental disease or defect excluding responsibility should be raised." Resp.Exh. B, p. 592. Counsel's perceived need for such an examination was based solely on "her observations of defendant[/petitioner] both before the filing of this initial motion and now." Resp.Exh. B, p. 591. Aside from counsel's own perceptions, as set forth in the renewed motion, there was no indication that evidence or argument was offered in support of the second motion. The motion court denied the motion.
Petitioner's third motion was based on "information supplied by a relative by marriage of Samuel McDonald." Resp.Exh. B, p. 468. Based on that information, counsel stated her "reasonable belief that at the time of the alleged offense Defendant may have been suffering from a mental disease or defect" and as a result could not have appreciated the wrongful nature of his conduct. Resp.Exh. B, p. 468. Although petitioner's counsel offered argument in support of the motion, she did not represent that petitioner's mental state would be a significant issue at trial. Consequently, that motion was ultimately denied.
In the fourth motion, counsel asserted that three days earlier, she received petitioner's medical records from the United States Army. Those medical records indicate that petitioner attempted suicide fourteen years prior to the commission of this crime. The Army's records characterize the attempted suicide as "passive aggressive act secondary to the fact he was not relieved of KP duty." See Resp.Exh. B, p. 736. Those records specifically state that petitioner was not suffering from any psychosis, neurosis, organic brain syndrome, or mental deficiency. Resp.Exh. B, p. 733. As a result, this motion was denied by the trial judge immediately prior to trial.
Essentially petitioner's counsel based all four motions for appointment of a psychiatrist on her belief that petitioner suffered from some mental disease or defect. She failed to offer any specific examples, nor did she provide any objective evidence that might demonstrate the existence of a mental disease or defect. At best, counsel offered petitioner's army medical records, which affirmatively state that petitioner is not suffering from a mental illness. See Resp.Exh. B, p. 733. Based on this evidence, the Court is not persuaded that the denial of petitioner's various motions for appointment of a psychiatrist violated his due process rights. There was simply no demonstration to the trial judge that petitioner's mental state was to be a significant issue at trial or that an expert might aid in the defense.
*1239 In an effort to bolster his claim, petitioner argues that the "evidence of alcohol and drug abuse, traumatic combat experiences, attempted suicide, and psychiatric evaluation in Vietnam raised issues under the statutory enumeration of mitigating circumstances, including extreme mental or emotional disturbance and substantially impaired capacity." Amended Petition, ¶ 51. Neither the relevance nor the meaning of this statement is entirely clear. Presumably, petitioner is referring to R.S.Mo. § 565.012 (repealed October 1, 1984, replaced by R.S.Mo. § 565.032), which provided in relevant part that:
.1 In all cases of capital murder for which the death penalty is authorized, the judge ... shall include in his instructions to the jury for it to consider:
* * * * * *
(2) Any of the statutory mitigating circumstances enumerated in subsection 3 which may be supported by the evidence;
* * * * * *
.3 Statutory mitigating circumstances shall include the following:
* * * * * *
(2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;
* * * * * *
(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;
* * * * * *
R.S.Mo. § 565.012. Petitioner contends that since Missouri law, under certain circumstances, might entitle a criminal defendant to a specific instruction relating to his mental health, the trial court was obligated to grant his request for a mental exam so that petitioner could evaluate whether to invoke this right.
The Court finds this claim to be without merit. Petitioner failed to indicate or demonstrate that his mental health would be a "substantial issue at trial." Rather at the time of his arraignment, petitioner entered a plea of not guilty and made no effort to assert a mental health defense. Resp.Exh. B, p. 15. Petitioner did file a "Motion to Permit Late Filing of Notice of Intent to Rely on Defense of Mental Disease or Defect Excluding Responsibility." See Resp.Exh. B, p. 614. However, in the first motion for a psychiatric examination, petitioner stated that he desired an examination to determine whether it would be appropriate to assert a mental health defense. See Resp.Exh. B, p. 610 at ¶ 7(a). This falls short of demonstrating that his mental health would be a "substantial issue" for trial. Further, at trial, petitioner's counsel specifically indicated that she was not relying on the defense of mental disease or defect excluding responsibility. "I am not now asking the court to permit me to rely on a [mental disease defense] because I cannot after obtaining such permission come forward with any evidence in support of it...." Resp.Exh. A-1, p. 274. Finally, as required by the express terms of § 565.012, the evidence failed to support an instruction on a mental-health based mitigating circumstance.
Petitioner also cites Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), in support of this claim. Petitioner's reliance is not persuasive, as that case addresses the propriety of instructing the jury on a defendant's professed mental illness, once a psychiatrist has offered expert testimony. The issue presented here is whether petitioner was entitled under the Constitution to a psychiatric examination in the first instance  a question which the Court answers in the negative above.
Finally, to the extent petitioner draws a distinction between the trial court's obligation to permit petitioner a mental exam to determine his mental state at the time of the crime and at the time of trial, the result is the same. Due process requires the trial court to hold a competency hearing sua sponte whenever evidence raises a sufficient doubt about the accused's mental competency to stand trial. Branscomb v. Norris, 47 F.3d 258, 261 (8th Cir.1995). There is no specific description of the quantum of proof necessary *1240 to establish "sufficient doubt," the trial court should consider evidence of irrational behavior of the accused, his demeanor, and any prior medical opinion as to the accused's competency. See, e.g, Griffin v. Lockhart, 935 F.2d 926, 930 (8th Cir.1991). Even doubts of the accused's competency expressed by his counsel may be relevant, but those doubts alone are insufficient to establish the "sufficient doubt" contemplated in Branscomb. Id. The habeas petitioner bears the burden of proving that objective facts known to the trial court raised a sufficient doubt to require a competency hearing. Id. "The key inquiry is whether a reasonable judge, in the same situation as the trial court, should have experienced doubt about the accused's competency to stand trial." Branscomb, 47 F.3d at 262. For all the reasons set forth above, this Court concludes that petitioner has failed to carry his burden. There was simply insufficient objective evidence presented to the trial court to compel a reasonable judge to order a competency hearing, especially in light of the presumption that any defendant is competent to stand trial. Weisberg v. State of Minnesota, 29 F.3d 1271, 1276 (8th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 935, 130 L.Ed.2d 880 (1994). For these reasons, all relief on Ground I of petitioner's first amended petition will be denied.

B. GROUND II: Denial of Motion for Judgment of Acquittal
In Ground II, petitioner claims that "[t]he trial court's denial of his motion for a judgment of acquittal at the close of all the evidence, based on petitioner's assertion that the prosecutor failed to prove an essential element of capital murder, as defined by statute, deprived petitioner of his Fifth, Eighth and Fourteenth Amendment rights." First Amended Petition, ¶ 54. The Court interprets this ground as challenging the sufficiency of the evidence of the mental element necessary for a conviction of capital murder. Specifically, petitioner alleges that the evidence adduced at trial, even viewed in a light most favorable to the prosecution, "failed to establish homicidal intent or premeditation." Amended petition, ¶ 55.
The United States Supreme Court set forth the standard for determining the sufficiency of evidence in a criminal case. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The constitutional standard for sufficiency of the evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 319, 99 S.Ct. at 2789. Based upon a review of the record before the Court, this ground is without merit. The events leading up to the murder and the cause and circumstances of the victim's death  involving non-fatal shots fired at the victim, the theft of the victim's wallet, a realization that the victim was a police officer, and ultimately the fatal gunshots to the victim's chest  support a finding of deliberation and premeditation under Missouri law, defined as "whenever the defendant thinks about the act for any length of time, however short, before he acts." State v. Bolder, 635 S.W.2d 673, 680 (Mo. banc 1982). Based on the evidence, it appears that a rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir.1990); cert. denied 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991).
Finally, this Court notes that the Missouri Supreme Court determined that "the jury could reasonably find defendant intended to take the life of Officer Jordan and acted with the necessary premeditation and deliberation." State v. McDonald, 661 S.W.2d at 500-01. To the extent that this determination represents a factual finding, that decision is entitled to deference from this Court. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir.1988). Therefore, the Court will deny all relief based on Ground II of the petition.

C. GROUND III: Trial Court's Conduct and Rulings Evidencing Its Bias Toward and Negative Regard For Petitioner
In Ground III, petitioner alleges that the trial court communicated its prejudice *1241 against and hostility toward petitioner to the jury, and in so doing, violated petitioner's Fifth, Eighth, and Fourteenth Amendment rights. Amended Petition, ¶ 57. This ground contains several claims: (a) the trial court improperly left the bench during trial to investigate an altercation outside the courtroom; (b) in doing so, the trial court admonished petitioner's trial counsel not to block the court's view of petitioner, thus allegedly revealing the court's prejudice against petitioner; (c) the trial court improperly and incorrectly suggested that a defense witness might have violated a duty of confidentiality in testifying; (d) the trial court improperly permitted various relatives of the victim to introduce themselves to the jury; (e) the court permitted the victim's wife to testify to irrelevant matters; and (f) the court failed to prevent the victim's wife from displaying her grief to the jury.
The only possible constitutional issue that these claims might assert is that petitioner was denied due process.[8] In the first claim under Ground III, petitioner alleges that when the trial judge left the bench and specifically admonished petitioner's trial counsel not to obstruct the court's view of the petitioner, the court implied to the jury that it was distrustful of petitioner. Due process is denied when the alleged trial court error is "gross, conspicuously prejudicial or of such import that the trial was fatally infected." Rhodes v. Foster, 682 F.2d 711, 714 (8th Cir.1982). The relevant question in this case, therefore, is whether the trial judge's conduct in leaving the bench and admonishing counsel not to obstruct the court's view of the accused so infected the proceeding with unfairness as to render the jury's guilty verdict and subsequent imposition of the death penalty a denial of due process. See, e.g., Sawyer v. Smith, 497 U.S. 227, 244, 110 S.Ct. 2822, 2832, 111 L.Ed.2d 193 (1990); Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).
With regard to leaving the bench during the voir dire, the petitioner failed to assert an objection. See Resp.Exh. A-1, p. 398-99. It was not until three days later, once the jury had been empaneled and sworn, and after the state had called ten witnesses, that petitioner's trial counsel objected the judge's conduct. Compare Resp. Exh. A-1, p. 398-99 with Resp.Exh. A-3, p. 913-14. Consequently, this Court is unwilling to afford petitioner relief now for something he did not seek relief for at the time. Gilmore, 861 F.2d at 1064. Further, after the jury returned its verdict as to guilt and punishment, the court asked them if his leaving the bench had in any way detracted from the proceedings. The jury replied in the negative. Resp.Exh. A-4, pp. 1430-31.
Petitioner also asserts that the trial judge's admonition to defense counsel not to obstruct the court's view of the defendant indicated to the jury that the court was prejudiced against and hostile toward petitioner. In response to the objection of petitioner's counsel, the trial judge stated:
Let the record show the defense lawyer and her co-counsel have brought a big tripod up, they, they had with them some big cardboard, and I have indicated to them they couldn't place anything that would obstruct the defendant's view of the witnesses when they testify and the Court's view of the defendant.
Resp.Exh. A-3, pp. 1058-59. The trial judge developed the record as to the size of the obstruction and the necessity that petitioner be able to see the witness. Petitioner's right to be able to view the witness is a constitutional right recognized by the United States Supreme Court in Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Consequently, this Court is not persuaded that the trial court's efforts to create an unobstructed view by petitioner or the court of the witness was inappropriate. Perhaps the trial judge could have made that intention clearer, but ultimately the judge's intention was clearly stated for the record. There is simply no evidence of a "gross, conspicuously prejudicial [act or one] of such import that the trial was fatally infected," and thus *1242 there is no due process deprivation here. Rhodes v. Foster, 682 F.2d at 714.
Petitioner next alleges that the trial court improperly and incorrectly suggested that a defense witness, William Cheeks, breached a duty of confidentiality in his testimony. At the time of trial, Mr. Cheeks was a drug counselor for Archway Treatment Center. He was called to testify about the drug treatment afforded state's witness Jacqueline Blue. After Mr. Cheeks testified about the Archway records, a conference was conducted outside the hearing of the jury, between the attorneys and the trial judge. During that sidebar conference, the trial judge advised Mr. Cheeks that "any unauthorized disclosure [of a patient's medical records] is a federal offense." Resp.Exh. A-3, p. 1087.
Again, at most this claim would entitle petitioner to habeas relief if he can establish that this claim constitutes a deprivation of due process. This claim is without merit, as the challenged remarks of the judge occurred during a bench conference, outside the hearing of the jury. See Resp.Exh. A-3, pp. 1087-1094. Therefore, there is no way the judge's remarks could influence the jury or reflect some bias on the part of the trial court. Absent the jury's awareness of the judge's remarks, assuming arguendo that they were inappropriate, there is no basis for finding that the trial was "fatally infected" by prejudice. All relief based on this claim of Ground III will be denied.
Petitioner's next claim under Ground III is that the trial court violated petitioner's due process rights by permitting members of the victim's family to introduce themselves to the jury. During voir dire, the trial judge asked members of the victim's family to stand and introduce themselves to the jury so that the jury members would recognize them and avoid contact with them. See Resp.Exh. A-2, pp. 498-500. Later, after the jury had been sworn, the Court made a similar introduction of petitioner's family members. See Resp.Exh. A-2, pp. 696-97. There is simply nothing in this record before the Court which demonstrate a due process deprivation. The trial court treated the victim's family and the petitioner's family in the same manner. Further, there is no showing that the trial court's actions prejudiced the jury in any manner, and there is certainly nothing to show that the trial was "fatally infected." Consequently, no relief will be afforded petitioner on this claim.
In his fifth claim for relief under Ground III, petitioner alleges that the trial court permitted the victim's widow to testify "regarding impertinent matters." The admission of evidence lies within the purview of the trial court, applying the applicable state laws. See, e.g., Donnelly, 416 U.S. at 643, 94 S.Ct. at 1871; Griffin v. Delo, 33 F.3d 895, 904 (8th Cir.1994). Habeas relief will be accorded a petitioner only "when the alleged error infringed upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied petitioner fundamental fairness." Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990), cert. denied, 499 U.S. 964, 111 S.Ct. 1594, 113 L.Ed.2d 657 (1991).
The victim's wife testified that her husband was a St. Louis County Police Officer. Resp.Exh. A-2, p. 714. She further testified that on the evening he was killed, her husband returned home from his second job as a security guard at approximately 9:30 p.m. Resp.Exh. A-2, p. 710. The victim then changed into civilian clothes and, consistent with St. Louis County Police policy, carried his service revolver concealed under his clothing. Resp.Exh. A-2, p. 714. The victim went to the Forest Package Liquor Store, accompanied by one of his four daughters. Mrs. Jordan then identified her husband's wallet, keys, badge and service revolver. Resp.Exh. A-2, pp. 714-16. Finally, she related to the jury how she was called to the liquor store later that evening when her husband and daughter had not returned. Resp. Exh. A-2, p. 716.
It is not clear why petitioner believes this testimony to be irrelevant. Nevertheless, any due process violations resulting from the admission of the testimony of the victim's wife was not so prejudicial as to fatally infect the entire trial and make it unfair. Consequently, any error here does not rise to the level of a federal constitutional violation, and *1243 all relief based on this claim of Ground III will be denied.
Finally, in Ground III, petitioner alleges that he was prejudiced because the trial court failed "to control or limit" Mrs. Jordan's displays of grief. Amended Petition ¶, 61. The transcript fails to reflect any disruptive outbursts of grief. Petitioner fails to demonstrate that any emotion shown by the victim's wife in anyway impacted the fairness of these proceedings. Consequently, any error here does not rise to the level of a federal constitutional violation, and all relief based on this claim of Ground III will also be denied.

D. GROUND IV: Trial Court's Ruling On Petitioner's Objection To The Testimony of Prosecution Witness Jacqueline Blue
In Ground IV petitioner alleges that the trial court violated his constitutional rights by overruling his objections to the "self-serving, hearsay testimony" of Ms. Jacqueline Blue, the woman who accompanied petitioner on the evening of the crime. Amended Petition, ¶ 63. Specifically, petitioner alleges that Ms. Blue was permitted to testify that she had made a videotaped statement to police prior to trial and that the content of that statement was consistent with her in-court testimony. See Resp.Exh. A-3, pp. 976-78. Petitioner alleges that M. Blue's in-court testimony effectively "bolster[ed] her testimony and enhance[d] her credibility." Amended Petition, ¶ 64. This ground was asserted in petitioner's motion for a new trial, see Resp.Exh. B, p. 178, and on direct appeal. See Resp.Exh. C, p. 14.
Again, petitioner is arguing that his due process rights were impaired by alleged trial court error.[9] In that context, petitioner must show that the alleged improprieties were "so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir.1985). Petitioner's burden in this context is to demonstrate that there is a "reasonable probability that the error complained of affected the outcome of the trial  i.e., that absent the alleged impropriety the verdict probably would have been different." Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (citations omitted).
Applying this narrow standard to the facts of this case, the Court is unpersuaded that any attempts by Ms. Blue to "bolster" her testimony with prior consistent statements "probably affected the outcome of the trial." There was an abundance of evidence tying petitioner to the crime. There were at least two eye-witnesses, in addition to the victim's daughter, see Resp.Exhs. A-2, pp. 731-40, 744, 747-48 and Resp.Exh. A-3, pp. 857-59, 861-66, & 870, petitioner's bloody shirt, and the fact that petitioner was found in the hospital suffering from several gunshot wounds. Resp.Exh. A-4, pp. 1069-70. Absent any showing that this alleged error tainted the outcome of petitioner's trial, this Court need not proceed further with this claim. All relief on Ground IV of petitioner's amended petition will be denied.

E. GROUND V: Circuit Attorney's Improper Argument During Guilt Phase of Trial
In Ground V, petitioner argues that the improper argument's of the prosecutor denied petitioner his due process rights. Amended Petition, ¶¶s 66-69. Specifically, petitioner challenges three remarks made by the prosecutor to the jury: (1) the prosecutor remarked that he removed the badge from his own wallet as soon as he heard of the victim's death and would never carry it again because of his own fear; (2) the prosecutor also told the jury that the victim was still on his knees looking for their verdict; and (3) finally, the prosecutor told the jury that they would never be able to look other people in the eye if they compromised on their verdict. Amended Petition, ¶ 67. Petitioner alleges that these remarks constituted "extraneous, personal and emotional matter" which prejudiced the jury against petitioner.
Initially, the Court rejects petitioner's assertion that these remarks somehow rise to the level of an Eighth Amendment violation. Even if the Court concluded, pursuant Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), that petitioner's *1244 argument falls properly under the Eighth Amendment, the Supreme Court has expressly concluded that such claims would be Teague[10] barred since petitioner's conviction became final prior to Caldwell.[11]Sawyer v. Smith, 497 U.S. 227, 236, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1989).
With respect to petitioner's due process arguments, the Missouri Supreme Court stated:
We have carefully reviewed [petitioner's] averments of improper argument ... [and] noted that (1) no objection was made to the complained of argument and (2) the prosecutor's remarks were in retaliation to [petitioner's argument]. We find no error, plain or otherwise, and deny the point.
McDonald, 661 S.W.2d at 502. As respondent indicates, this "constitutes a short, plain statement of enforcement of the procedural bar." Response, p. 41. Consequently, absent a showing of cause and prejudice, this Court will reject any claim based on these remarks. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977); Worthan v. Wyrick, 805 F.2d 303, 305 n. 4 (8th Cir.1986), cert. denied sub nom., Worthan v. Armontrout, 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987).
Further, even absent such a bar, the Court finds this ground to be without merit. Cf. Green v. Groose, 959 F.2d 708, 709 (8th Cir. 1992). In order to make out a cognizable claim of prosecutorial misconduct:
[t]he petitioner must show that the alleged improprieties were "so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Under this standard, a petitioner must show that there is a "reasonable probability that the error complained of affected the outcome of the trial  i.e., that absent the alleged impropriety, the verdict probably would have been different."
Blair v. Armontrout, 916 F.2d 1310, 1324 (8th Cir.1990) (citations omitted), quoting Newlon v. Armontrout, 885 F.2d 1328, 1336-37 (8th Cir.1989), cert. denied sub nom., Delo v. Newlon, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). Having reviewed the comments petitioner claims are objectionable in the context of the entire trial record, this Court finds that the alleged improprieties did not rise to the level of depriving petitioner of a fair trial. See, e.g., Carlson v. State, 945 F.2d 1026, 1029 (8th Cir.1991). The majority of the prosecutor's argument was based on evidence adduced at trial, and responsive to the arguments of petitioner's trial counsel. See McDonald, 661 S.W.2d at 501; Resp. Exh. A-3, p. 1146 (indicating that petitioner first mentioned officials who carry badges); Resp.Exh. A-3, p. 1153 (reflecting petitioner's argument concerning propriety of capital punishment in this case). In addition, the Court notes that the jury was instructed that the argument of counsel was not evidence. See, Jury Instructions No. 2 & No. 22, Resp. Exh. B, pp. 273, 293. Based on all these circumstances, the Court finds the prosecutor's argument did not violate petitioner's due process rights. Therefore, this ground is without merit and all relief on this ground will be denied.

F. GROUND VI: Trial Court's Refusal to Dismiss The Aggravating Circumstance That The Offense Was Committed For The Purpose of Receiving Money
In Ground VI, petitioner alleges that even viewing the evidence in a light most favorable to the prosecution, there is insufficient evidence to prove that the crime for which petitioner was convicted was committed for the purpose of receiving money, Amended Petition, ¶ 71, therefore, the trial court erred in denying his motion to dismiss the aggravating circumstance. Amended Petition, ¶ 70. Petitioner asserts that the statutory aggravating circumstance applies only to "crimes such as murder for hire or contract killings, in which the primary and pre-existing purpose of the killing itself is financial gain." *1245 Amended Petition, ¶ 72. Respondent argues that petitioner never asserted a constitutional argument in support of this ground when he presented it on direct appeal. Rather petitioner made only a state law argument, attacking the Missouri court's construction of the capital murder statute. See Resp.Exh. C, pp. 65-72.
In Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the United States Supreme Court held that a federal court should not reach the merits of a petitioner's habeas corpus claim if he has failed adequately to present it to a state court. In order for a claim to have been adequately presented to a state court for procedural purposes in a habeas proceeding, the same facts and legal theories in support of the claim must be advanced in both state and federal court. Gilmore v. Armontrout, 861 F.2d 1061, 1065 n. 8 (8th Cir.1988), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989) (citing Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Because petitioner's various constitutional theories were not presented in the state courts, such a contention is now procedurally barred unless petitioner shows cause and prejudice. He has shown neither. Further, the record does not support a finding of petitioner's probable innocence. Accordingly, this Court is barred from affording petitioner any relief on this ground.
Additionally, even if this Court were to reach the merits of this ground, the Court finds it to be without merit. Petitioner offers no support for his strict reading of the Missouri statute governing this aggravating circumstance. In addition, it was not until June 1990 that the Supreme Court recognized sufficiency of the evidence as a cognizable ground for habeas relief, see Lewis v. Jeffers, 497 U.S. 764, 778-79, 110 S.Ct. 3092, 3101, 111 L.Ed.2d 606 (1990), well after petitioner's conviction became final in 1985. Consequently, Teague bars retroactive application of this "new rule." Finally, the Court notes, as did respondent, that the Missouri Supreme Court has carefully examined the sufficiency of the evidence, as part of its statutory review of petitioner's death sentence. See R.S.Mo. § 565.014.3(2) (repealed effective October 1, 1984). In conducting this review, the Missouri Court rejected petitioner's statutory argument. McDonald, 661 S.W.2d at 502-05. Pursuant to 28 U.S.C. § 2254, this Court is without authority to reexamine Missouri Law. Harkins v. Wyrick, 589 F.2d 387 (8th Cir.1979).

G. GROUND VII: Motion in Limine and Trial Objections To Improper Argument by Circuit Attorney Regarding Punishment
In Ground VII, petitioner alleges that his due process rights were violated when the trial court erred by overruling motions in limine aimed at excluding from the prosecutor's penalty-phase argument certain matters pertaining to punishment. Amended Petition, ¶ 75.[12] Petitioner also alleges that the trial court erred in overruling objections made by petitioner to those portions of the prosecutor's penalty-phase argument which petitioner sought to exclude through the motion in limine. Specifically, during his penalty-phase argument, the prosecutor displayed an envelope to the jury which allegedly contained additional photographs of the victim, which were not in evidence. Resp.Exh. A-4, p. 1385. The prosecutor stated that the victim was a "real nice man," but the rules of evidence would not allow him to develop that evidence. Resp.Exh. A-4, p. 1387. The prosecutor told the jury that "if Mr. McDonald were sentenced to life imprisonment, that sentence might be reduced by legislative or executive action." Resp.Exh. A-4, p. 1395-96. The prosecutor also told the jury that, in his personal opinion, the death penalty would deter homicide and was appropriate for capital murder. Resp.Exh. A-4, p. 1400. Finally, the prosecutor stated his belief that society had a right to defend itself and in fact was attempting to do so by providing for the death penalty for certain crimes. Resp.Exh. A-4, p. 1397.
*1246 Closing arguments in capital cases must receive "a greater degree of scrutiny" than those in non-capital cases. Caldwell v. Mississippi, 472 U.S. 320, 329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) (plurality opinion). In his first claim under Ground VII, petitioner alleges that the prosecutor acted improperly in displaying an envelope containing photos which were not introduced into evidence. The prosecutor made a single reference to the pictures. Resp.Exh. A-4, p. 1385. Petitioner's trial counsel objected to the display, but was overruled. Resp.Exh. A-4, p. 1385. The prosecutor made no effort to display the contents of the envelope to the jury, and there was no suggestion that the photos reflected matters that were not in evidence. See McDonald, 661 S.W.2d at 506; Resp.Exh. A-4, pp. 1385-86. There is simply no showing here that the trial court erred in overruling petitioner's objection or that the petitioner was in any way prejudiced by the display of the envelope.
Petitioner also challenges the prosecutor's reference to the victim as a "real nice person." The Missouri Supreme Court found that the statement was supported by the evidence, and there was no error in admitting the statement. McDonald, 661 S.W.2d at 506. The record adequately supports such a finding, see Resp.Exh. A-2, pp. 710-12, 714, 717, and there is no showing that the remark in anyway prejudiced petitioner, especially in light of the trial court's admonition to disregard personal remarks of the prosecutor. Resp.Exh. A-4, p. 1392. In addition the jury was given two instructions which clearly state that argument of counsel is not evidence. See, Jury Instructions No. 2 & No. 22, Resp.Exh. B, pp. 273, 293. There is no indication here that the remark was improper or that petitioner was prejudiced thereby.
Petitioner next claims that he was denied his constitutional rights when the trial court permitted the prosecutor to argue that a life sentence might be reduced by legislative or executive action. In Caldwell v. Mississippi, the Supreme Court held that a jury must not be misled regarding the role it plays in the sentencing decision. Caldwell, 472 U.S. at 336, 105 S.Ct. at 2643 (plurality opinion), at 341-42, 105 S.Ct. at 2646 (O'Connor J., concurring in part and concurring in judgment). The prosecutor in Caldwell, in remarks which were "quite focused, unambiguous, and strong," misled the jury to believe that the responsibility for sentencing defendant lay elsewhere. Id. at 340, 105 S.Ct. at 2645. The trial judge not only failed to correct the prosecutor's remarks, but in fact openly agreed with them. Id. at 339, 105 S.Ct. at 2645.
The plurality concluded that the prosecutor's remarks, along with the trial judge's affirmation, impermissibly "minimize[d] the jury's sense of responsibility for determining the appropriateness of death." Id. at 341, 105 S.Ct. at 2646. Such a diminution, the plurality felt, precluded the jury from properly performing its responsibility to make an individualized determination of the appropriateness of the death penalty. Id. at 330-31, 105 S.Ct. at 2640-41. Justice O'Connor, in her opinion concurring in part and concurring in the judgment, identified more narrowly the infirmity in the prosecutor's remarks: "In my view, the prosecutor's remarks were impermissible because they were inaccurate and misleading in a manner that diminished the jury's sense of responsibility." Id. at 342, 105 S.Ct. at 2646.
Relying on Justice O'Connor's position, which is controlling, see Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977), the Supreme Court has concluded that Caldwell is "relevant only to certain types of comments  those that mislead the jury as to its role in the sentencing process in such a way that allows the jury to feel less responsible than it should for the sentencing decision." Darden v. Wainwright, 477 U.S. 168, 184 n. 15, 106 S.Ct. 2464, 2473 n. 15, 91 L.Ed.2d 144 (1986). Thus, "[t]o establish a Caldwell violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." Dugger v. Adams, 489 U.S. 401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989).
Petitioner argues that Caldwell controls this case. He contends that the prosecutor's *1247 statements concerning clemency and the potential for legislative intervention impermissibly undermined the sentencing jury's sense of responsibility, in violation of the principle established in Caldwell. This Court disagrees. The infirmity identified in Caldwell is simply absent in this case. Here, the jury was not affirmatively mislead regarding its role in the sentencing process. Rather, the prosecutor merely stated, accurately, that legislative or executive action could result in an alteration of petitioner's sentence. This statement would have been true regardless of the sentence imposed upon petitioner. Further, the jury instructions clearly indicated that the argument of counsel was not evidence. See Jury Instructions No. 2 & No. 22, Resp.Exh. B, pp. 273, 293. Finally, as indicated above, in response to petitioner's objections at trial, the trial judge admonished the jury to "disregard any personal statements" made by the prosecutor. Resp.Exh. A-4, p. 1392.
That this case is distinguishable from Caldwell only resolves part of petitioner's challenge. Petitioner also asserts a violation of his Eighth Amendment rights. Presumably, petitioner is arguing that because statements concerning clemency and possible legislative intervention were permitted, the jury was permitted to discount the significance of its role, thus rendering petitioner's sentencing proceeding so unreliable that it violated his Eighth Amendment rights. See, e.g., Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion). As indicated above, the challenged statements were likely irrelevant, but the fact that evidence deemed irrelevant under state law was admitted does not constitute a federal constitutional error. Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991).
In determining that the prosecutor's challenged remarks did not have the effect of discounting or diminishing the jury's role, the Court is mindful of the fact that the due process clause does not allow the execution of a person "on the basis of information which he had no opportunity to deny or explain." Gardner v. Florida, 430 U.S. 349, 362, 97 S.Ct. 1197, 1207, 51 L.Ed.2d 393 (1977). However, the Court does not find, based on its review of the record, that the jury could reasonably have believed that petitioner would be released if he were not executed. There is no evidence to indicate that such a misunderstanding pervaded the jury's deliberations, or that it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration. Rather, the jury was instructed that it could sentence petitioner to death only if it found any one of the "aggravating circumstances," and the jury specifically made such a finding.
The Court also finds no due process violation resulting from the prosecutor's argument concerning the deterrent effect of the death penalty or society's "right" to defend itself. The Supreme Court has approved the jury's consideration of "future dangerousness" during the penalty phase of a capital trial, recognizing that a defendant's future dangerousness bears on all sentencing determinations made in our criminal justice system. See California v. Ramos, 463 U.S. 992, 1003 n. 17, 103 S.Ct. 3446, 3454 n. 17, 77 L.Ed.2d 1171 (1983) (explaining that it is proper for a sentencing jury in a capital case to consider "the defendant's potential for reform and whether his probable future behavior counsels against the desirability of his release into society."); Jurek v. Texas, 428 U.S. 262, 275, 96 S.Ct. 2950, 2957-58, 49 L.Ed.2d 929 (1976) (plurality opinion). Further, the state's evidence in aggravation, offered to support the imposition of a death sentence, is not limited to evidence relating to statutory aggravating circumstances. See Barclay v. Florida, 463 U.S. 939, 948-51, 103 S.Ct. 3418, 3424-26, 77 L.Ed.2d 1134 (1983) (plurality opinion); Ramos, 463 U.S. at 1008, 103 S.Ct. at 3457 ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment"). Thus, rather than being constitutionally impermissible, it is fairly common that a prosecutor will emphasize a defendant's potential future dangerousness and then urge the death penalty so that the *1248 defendant could not pose a threat to society if released. See, e.g., Simmons v. South Carolina, ___ U.S. ___, ___, 114 S.Ct. 2187, 2193, 129 L.Ed.2d 133 (1994).
Finally, the petitioner also challenges the prosecutors remarks concerning the propriety of the death penalty for other crimes. While perhaps irrelevant, the Court is not persuaded that these remarks had any bearing whatsoever on the proceedings. The jury was admonished by the trial judge and in the jury instructions not to construe the argument of counsel as evidence. Further, petitioner failed to timely object to these statements, which further supports the Court's finding that they were not prejudicial.
For all the reasons indicated above, the Court finds Ground VII to be without merit, and all relief on that ground will be denied.

H. GROUND VIII: Unconstitutionality of Petitioner's Death Sentence
In Ground VIII, petitioner alleges that the imposition of a death sentence upon him violates the Eighth and Fourteenth Amendments. Amended Petition, ¶ 79. In his first claim under this ground, petitioner claims that the death sentence was imposed under the "influence of passion, prejudice, and other arbitrary factors." Amended Petition, ¶ 80. The Missouri Supreme Court found this claim to be without merit, and this Court finds that this argument does not state a claim for relief under § 2254(a). Consequently, petitioner will be denied all relief on this claim of Ground VIII.
In his second claim under this ground, petitioner claims that the evidence does not support a finding of the necessary aggravating circumstance to support the imposition of the death penalty. The Court has already addressed this argument above and rejected it. Therefore, petitioner will be denied relief based on this claim of Ground VIII.
Next petitioner alleges that his "sentence is excessive and disproportionate in comparison to sentences imposed upon others in situations similar in fact." Amended Petition, ¶ 82. Petitioner does not offer evidence of "others in situations similar in fact" who have received a "lesser" sentence. Further, petitioner does not, nor can he, show any entitlement to a particular sentence merely because another person similarly situated received a lesser sentence.
Nevertheless, the Court proceeds to consider the remainder of petitioner's argument with regard to this claim. The Eighth Amendment prohibits sentences disproportionate to the crime committed. Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). To determine whether a sentence is so disproportionate that it violates the Eighth Amendment, the Court must (1) weigh the gravity of the offense and the harshness of the penalty, (2) compare sentences imposed for other crimes in the same jurisdiction, and (3) compare sentences imposed for the same crime in other jurisdictions. Id. at 292, 103 S.Ct. at 3010-11.
Even applying this balancing test, a successful challenge of a sentence is rare. Solem v. Helm, 463 U.S. at 289-90, 103 S.Ct. at 3009-10 (1983) (citing Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980)); Hutto v. Davis, 454 U.S. 370, 374, 102 S.Ct. 703, 705-06, 70 L.Ed.2d 556 (1982). The federal court's are compelled to afford substantial deference to a legislature's broad authority to determine the types and limits of punishment and to trial courts who have the discretion to sentence offenders. Helm, 463 U.S. at 290, 103 S.Ct. at 3009-10. "In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." Helm, 463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16. Notwithstanding petitioner's thorough research and well-written petition, extended analysis is not needed to determine that his sentence does not violate the Eighth Amendment. Rather, Supreme Court and circuit precedent establish that this sentence is not cruel and unusual. A review of case law indicates that the Supreme Court will not invalidate a sentence unless it is grossly disproportionate to the crime. See Hutto v. Davis, 454 U.S. at 377, 102 S.Ct. at 707 (concurring, Powell, J.); Solem v. Helm, 463 *1249 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (finding sentence of life without possibility of parole grossly disproportionate, and thus cruel and unusual punishment); cf. Rummel, 445 U.S. at 263, 100 S.Ct. at 1133.
Although the jury imposed the ultimate sanction upon petitioner, such a sentence does not violate the Eighth Amendment. He had several prior convictions, many of which involved at least the threat of violence, see Resp.Exh. B-1, pp. 38-39, and, in this instance, shot and killed his victim, who was already down to his knees, in full view of the victim's young daughter. When a defendant has repeated prior offenses, the state need not treat him as a first offender. Rummel, 445 U.S. at 284, 100 S.Ct. at 1144. This claim for relief will be denied.
As his fourth claim for relief under Ground VIII, petitioner argues that there was evidence that he was intoxicated at the time of the offense, that he was shot after or at the same time as the victim, that he was a "model jail inmate," that he has a wife and child, and finally, that he served his country in Vietnam. Presumably, these are arguments offered in mitigation of the death sentence. Petitioner is correct that the record reflects evidence of all of these things. However, the jury was charged with the responsibility of sentencing petitioner based on the evidence. They undertook that responsibility and determined that petitioner should be put to death. None of the mitigating circumstances asserted in this claim are persuasive. To the extent that the allegations of this portion of the amended petition are aimed at supporting petitioner's claim that the death sentence was disproportionate to the crime committed, the Court rejects this claim as not cognizable under § 2254(a). See, e.g., Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Similarly, to the extent petitioner argues that his alleged mental illness is a mitigating factor, the Court has considered that above and will deny any relief based on that claim.

I. GROUND IX: Ineffective Assistance of Counsel
In Ground IX, petitioner asserts several claims of ineffective assistance of counsel. Such claims are governed by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which articulated a two-part test for resolving such challenges. First, petitioner must demonstrate that his attorney's representation fell below an objective standard of reasonableness under the circumstances. Second, petitioner must establish that the alleged error was so prejudicial that there is a reasonable probability it would have changed the result of his trial. This two-fold showing is required to overcome the strong presumption that counsel rendered constitutionally sufficient representation. Beans v. Black, 757 F.2d 933, 936 (8th Cir.), cert. denied, 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 334 (1985). Finally, in a federal habeas proceeding, the underlying facts in regard to counsel's performance are entitled to the presumption of correctness under 28 U.S.C. § 2254(d), if fairly supported by the record. Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir.1988), cert. denied, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). Upon examination of the record, the Court is left with the firm conviction that counsel's performance was not defective.
In his first claim under Ground IX, petitioner alleges that his trial counsel was ineffective in failing to investigate petitioner's prior psychiatric history, failing to properly request or otherwise secure a mental examination of petitioner, and in failing to adduce evidence pertaining to petitioner's mental condition. Amended Petition, ¶ 88. The Missouri state courts made extensive findings on the effectiveness of counsel's representations, especially with regard to the mental competency issue, see, McDonald v. State, 758 S.W.2d 101, 105-107 (Mo.App. 1988); State v. McDonald, 661 S.W.2d 497 (Mo.1983), and this Court need not repeat them here. Rather, this court will adopt those findings as its own, and, based on those findings, as indicated in ruling on Ground I, the Court finds no evidence to support petitioner's entitlement to a mental examination. Therefore, any request for an examination would have been futile. Nevertheless, counsel made several requests for an examination. In so doing, the record indicates that trial counsel made a conscious decision in not *1250 stating her intent to file a notice of intent to rely on mental disease or defect in order to keep results of any psychiatric examination from the Circuit Attorney's office. See, e.g., Resp.Exh. B, pp. 591-92. The Court is unwilling to second-guess this strategic decision. Counsel's failure to obtain such an examination could not rise to the level of ineffective assistance. In addition, there is no showing that had petitioner's trial counsel obtained such an examination, the outcome of petitioner's trial would be different.
In his second claim petitioner alleges that his trial counsel was ineffective in failing to adduce evidence during the pretrial hearings of all grounds known to her for the suppression of the identification testimony of state witnesses Archie White and Stanley Hunter. Amended Petition ¶ 89. Petitioner fails to offer any detail concerning this claim or why the identification should have been suppressed. Noting this infirmity, the Missouri Court of Appeals declined to review this ground in petitioner's 27.26 motion. See McDonald, 758 S.W.2d at 107. Similarly, this Court finds little or no support for this claim, and no effort by petitioner to overcome the procedural bar created by the Missouri court's refusal to consider this ground. Accordingly, this Court will deny all relief based on this claim of Ground IX. See, e.g., Byrd v. Armontrout, 880 F.2d 1, 7 (8th Cir. 1989), cert. denied, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990).
In his third claim for relief under Ground IX, petitioner claims that his trial counsel was ineffective in failing to object at trial to the identification testimony of White and Hunter. Amended Petition, ¶ 90. Petitioner claims that the identification was the result of an improper viewing by the witnesses. This claim is related to the second claim asserted under Ground IX and it will be denied for the same reason. Petitioner failed to adequately raise this issue before the Missouri courts, and this Court declines to entertain it here. Rather, based on the insufficient support for this claim, the Court finds it to be without merit, and no relief will be afforded on this claim of Ground IX.
In the fourth claim under Ground IX, petitioner asserts that his counsel was ineffective in failing to adequately examine White and Hunter concerning their prior statements, that they would not be able to identify petitioner as the assailant. Amended Petition, ¶ 91. This claim was presented in petitioner's 27.26 motion and rejected by the Missouri court. However, petitioner failed to appeal the denial of relief based on that claim. Compare Resp.Exh. F, pp. 33-34 at ¶¶s 3 & 6, with Resp.Exh. H-1, pp. 7-14. Petitioner did not comply with Missouri procedural rules when he failed to advance this claim on appeal from the denial of his Rule 27.26 motion. See Stokes v. Armontrout, 851 F.2d 1085, 1092 (8th Cir.1988) (concluding that Missouri petitioner's failure to raise claim on appeal from denial of state post-conviction motion erected a procedural bar to federal habeas review); see also Benson v. State, 611 S.W.2d 538, 541 (Mo.App.1980) (noting that Missouri procedure requires presentation of a claim "at each step of the judicial process" in order to avoid default). Hence, federal habeas review of this claim is precluded unless petitioner can demonstrate cause for his default and actual prejudice resulting from the alleged constitutional violation. Wainwright, 433 U.S. at 84, 97 S.Ct. at 2505. Petitioner makes no attempt to demonstrate such cause and prejudice or his probable innocence, thus this claim is barred and no relief shall be afforded on the basis of claim four of Ground IX.
Petitioner asserts in claim five of Ground IX that his counsel was ineffective in failing to investigate and interview patrons of the Babysitter's Lounge. Amended Petition, ¶ 92. Similar to claim four under Ground IX, this claim was asserted in petitioner's 27.26 motion, Resp.Exh. F, p. 34 at ¶ 7, rejected by the 27.26 court, Resp.Exh. F, pp. 12-22, and then not pursued on appeal from the denial of the 27.26 motion. See generally, Resp. Exh. H-1. Consequently, similar to claim four, review of this claim is barred. Petitioner fails to show cause and prejudice or probable innocence. Therefore all relief based on this claim will be denied.
Even if the Court were to reach the merits of this claim, the Court finds it to be without merit. Trial counsel does have a *1251 duty to conduct a reasonable investigation or to make a reasonable determination that further investigation is unnecessary. When a claim for ineffective assistance of counsel is alleged on the basis of failing to investigate or act, the reasonableness of the nonfeasance must be assessed in light of all circumstances, and a significant degree of deference is to be given to counsel and his or her professional judgment. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066.
In this case, counsel's decision not to investigate potential witnesses at the Babysitter's Lounge was clearly a matter within the purview of counsel's trial planning or strategy. Because the lounge was across the street from the crime scene, and Mr. White was able to view the scene only through a window, Resp.Exh. A-1, p. 90, it is reasonable to infer that there were no additional witnesses, other than Mr. White, who were present in the lounge and might be of assistance. Also, petitioner makes no showing that he was prejudiced by counsel's failure to interview other patrons of the lounge. Accordingly, petitioner's counsel did not violate either the performance or prejudice standards of Strickland.
In claim six, petitioner argues that his trial counsel failed to object to the prosecution's failure to provide petitioner with all evidence favorable to his case. Amended Petition, ¶ 93. By way of example, petitioner asserts that the state possessed statements, which presumably would have been favorable to petitioner's case obtained, from patrons of the Babysitter's Lounge. Similar to claims four and five, this claim was rejected in petitioner's 27.26 motion, Resp.Exh. F, p. 35 at ¶ 14, rejected by the 27.26 court, Resp. Exh. F, pp. 12-22, and then not pursued on appeal from the denial of the 27.26 motion. See generally, Resp.Exh. H-1. Consequently, similar to claims four and five, review of this claim is barred. Further, petitioner fails to show cause and prejudice from the Court's refusal to entertain this claim for relief. Therefore, petitioner will not be afforded any relief on this claim. In rejecting this claim, the Court also notes that there is no evidence what if any statements were obtained from patrons of the Babysitter's Lounge. It does not appear that the state courts were presented with any more evidence than this Court, thus this Court finds that this claim is without merit and shall be denied.
In his seventh claim under Ground IX, petitioner claims that his counsel was ineffective in failing to adduce evidence that blood found at the crime scene, on the clothes offered into evidence, and in the automobile allegedly used in connection with the crime, was not the same type as petitioner's blood. Amended Petition, ¶ 94. This claim was raised in petitioner's 27.26 motion, Resp. Exh. B, p. 34 at ¶ 8, rejected, Resp.Exh. F, pp. 16, 21, and raised on appeal of the denial of that motion.[13]
Before the 27.26 court, petitioner argued that his blood type did not match the blood enzyme found at various locations relevant to this case. However, scientific evidence presented to the court clearly indicated that blood type was not relevant to blood enzyme type. Therefore, to resolve any question, petitioner was "offered an opportunity to have laboratory personnel test his blood for enzyme comparison," but petitioner refused. Resp.Exh. F, p. 16. Consequently, the 27.26 court determined that the evidence failed to support petitioner's allegations. Resp.Exh. F, p. 21.
On appeal from the denial of his 27.26 motion, petitioner alleged his counsel was ineffective for failing to adduce evidence that the blood found at the scene of the shooting did not match petitioner's.[14] In reviewing *1252 this claim, the Missouri Court of Appeals found that it was a strategic choice of counsel not to pursue this avenue of inquiry. Petitioner admitted to his trial counsel that "there was a possibility" that further blood testing would place him at the crime scene at the time of the crime.
In light of petitioner's own refusal not to be tested and his admission that proper testing might establish his presence at the crime scene, this Court does not find trial counsel's refusal to pursue this issue to be unreasonable. Further, there is no showing that had trial counsel done so, a different result would have been achieved. In fact, petitioner concedes that such a course of action may have strengthened the state's case by establishing petitioner's presence at the crime scene. This claim is without merit and all relief based on this claim will be denied.
In claim eight under this ground, petitioner argues that his trial counsel failed to examine a Donna Becherer, a criminalist with the St. Louis City Police Department Laboratory Division, so as to highlight the discrepancy between petitioner's blood type and the blood evidence recovered from the crime scene, the clothes recovered from the sewer and Ms. Blue's automobile. Amended Petition, ¶ 95. Petitioner also alleges in this claim that his trial counsel's ineffective representation permitted witness Becherer to offer hearsay testimony. Amended Petition, ¶ 95.
Neither petitioner's claim concerning his counsel's cross-examination of Becherer, nor the alleged hearsay element of that witness' testimony were presented in either petitioner's original 27.26 motion or the amended motion. See Resp.Exh. F, pp. 30-39, 23-27. Further, this claim was not raised on appeal from the denial of the 27.26 motion. See Resp.Exhs. H-1 & H-2. Petitioner's failure to present these claims constitutes a procedural bar to this Court's review. Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir.1989), stay lifted, 495 U.S. 320, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990). Further, petitioner makes no effort to show cause and prejudice for this default. Also, petitioner makes no showing of how this claim might impact a finding of his guilt or innocence. Therefore, relief based on this claim will be denied.
As the ninth claim under Ground IX, petitioner alleges that his counsel was ineffective in that she failed to "make a reasonable investigation of the police search of the automobile allegedly used in connection with the crime, and the seizure of property from that automobile." Amended Petition, ¶ 96. Petitioner argues that this failure deprived him of the opportunity to present all facts material to the resolution of his motion to suppress that evidence. Petitioner asserted this claim in his 27.26 motion. Resp.Exh. F, p. 34 at ¶ 11. However, petitioner did not pursue this point on appeal from the denial of his 27.26 motion. Thus federal review of this claim is procedurally barred. Stokes, 893 F.2d at 155. Further, petitioner fails to show cause and prejudice or probable innocence that might permit him to overcome this default. Therefore, relief based on this claim will be denied.
In claim ten under Ground IX, petitioner claims that his trial counsel "improperly shifted the burden concerning the suppression of evidence found in the automobile by presenting evidence on behalf of the prosecution rather than refuting such evidence." Amended Petition, ¶ 97. The basis of this claim is not entirely clear. Petitioner does not specify what evidence his trial counsel presented that benefited the state's case. Nevertheless, petitioner asserted this claim in his 27.26 motion. Resp.Exh. F, p. 35 at ¶ 12. Relief based on that claim was denied. Resp.Exh. F, pp. 12-22. However, petitioner declined to appeal the denial of relief based on this claim. See Resp.Exh. H-1 & H-2. Thus federal review of this claim is procedurally barred. Stokes, 893 F.2d at 155. Further, petitioner fails to overcome this default. Therefore, relief based on this claim will be denied.
For his eleventh claim under this ground, petitioner alleges that his trial counsel failed to object to the introduction of clothing allegedly received from the VA Hospital on the *1253 grounds that "the prosecution had failed to demonstrate continuous custody of the evidence, had failed to demonstrate that the clothing ever had been worn by Mr. McDonald, and had failed to demonstrate that the clothing had been in custody and control of Mr. McDonald." Amended Petition ¶ 98. Similar to several other claims asserted under this ground, petitioner asserted the claim in his 27.26 motion, Resp.Exh. F, p. 35 at ¶ 15 but failed to appeal the denial of the motion with respect to this claim. See generally Resp.Exhs. H-1 & H-2. Consequently, this Court's consideration of claim eleven of Ground IX is barred, and no relief shall be afforded on this claim.
Next, petitioner asserts that he was denied his Sixth Amendment right to effective assistance of counsel in that his trial counsel failed to interview Dr. Mary Case, a forensic pathologist serving as deputy chief medical examiner for the City of St. Louis. Amended Petition ¶ 99. Petitioner alleges that such an examination would have elicited testimony that because of petitioner's height, he could not have fired the fatal shots. Amended Petition, ¶ 99. Petitioner presented this claim in his 27.26 motion. Resp.Exh. F, p. 35 at ¶ 17. The motion was denied. Resp.Exh. F, pp. 12-22. Petitioner did not pursue this claim on appeal from the denial of his 27.26 motion. See generally Resp.Exhs. H-1 & H-2. Petitioner's failure to pursue this claim on appeal constitutes a bar to this Court's review. Stokes, 893 F.2d at 155. Further, petitioner fails to show cause and prejudice for this default or that it is probable that he is innocent of the crime charged. Therefore, relief based on this claim will be denied.
In claim thirteen under Ground IX, petitioner asserts that his trial counsel was ineffective in that she failed to examine Ms. Jacqueline Blue "in such a manner as to apprise the jury that Ms. Blue previously had made statements to the effect that she had no knowledge of the offense, that she had not been present at the crime scene, and that she had a long history of mental illness." Amended Petition, ¶ 100. This claim was presented in petitioner's 27.26 motion, Resp. Exh. F, p. 36 at ¶ 19, and denied by the 27.26 court. Resp.Exh. F, pp. 12-22. Similar to other claims asserted under this ground, petitioner declined to pursue this claim on appeal from the denial of the 27.26 motion and fails to make a showing sufficient to overcome this procedural bar. Stokes, 893 F.2d at 155. Therefore, petitioner shall be denied all relief based on this claim.
In his fourteenth claim of ineffective assistance of counsel under Ground IX, petitioner claims that his counsel should have objected to the testimony of the victim's daughter on the ground that she "was a minor child and incompetent because she did not understand the difference between telling the truth and lying." Amended Petition, ¶ 101. This claim was asserted at paragraph 20 of petitioner's 27.26 motion, it was rejected by the Missouri court, Resp.Exh. F, pp. 12-22, and petitioner declined to assert it on appeal from the denial of his 27.26 motion. See generally, Resp. Exhs. H-1 & H-2. This failure to pursue the claim on appeal constitutes a procedural default which, absent a showing of cause and prejudice or actual innocence, will preclude this Court's review. Stokes, 893 F.2d at 155. Petitioner fails to make such a showing. Therefore, relief based on this claim will be denied.
Next, petitioner alleges that his trial counsel was ineffective in failing to challenge the "death qualification" of the jury. Amended Petition, ¶ 101. As with several of the prior claims, petitioner did present this claim in his 27.26 motion, Resp.Exh. F, p. 36 at ¶ 22, but did not pursue the denial of this claim on appeal. See generally Resp.Exhs. H-1 & H-2. Further, petitioner has made no showing of cause and prejudice or actual innocence in relation to this claim. Therefore, this Court will deny all relief based on this claim of Ground IX.
In claim sixteen under Ground IX, petitioner claims that his counsel should have objected to the jury panel on the ground that the panel did not represent a "full and fair cross-section of the community." Amended Petition, ¶ 103. This claim was asserted at paragraph 24 of petitioner's 27.26 motion, it was rejected by the Missouri court, Resp. Exh. F, pp. 12-22, and petitioner declined to assert it on appeal from the denial of his 27.26 motion. See generally, Resp.Exhs. H-1 *1254 & H-2. This failure to pursue the claim on appeal constitutes a procedural default which, absent a showing of cause and prejudice, will preclude this Court's review. Stokes, 893 F.2d at 155. Petitioner fails to make such a showing of cause and prejudice. Further, for the reasons set forth above, the record clearly does not support a finding of petitioner's probable innocence. Therefore, relief based on this claim will be denied.
As his seventeenth claim under Ground IX, petitioner alleges a deprivation of his Sixth Amendment right to the effective assistance of counsel in that his counsel failed to advise him that the jury would be instructed regarding the proper use of petitioner's prior criminal history. Amended Petition, ¶ 104. Allegedly, this "deprivation" prevented petitioner from making an informed decision about whether to testify in his own defense. Amended Petition, ¶ 104. This claim was asserted at paragraph 23 of petitioner's 27.26 motion, and it was rejected by the Missouri court. Resp.Exh. F, pp. 12-22. Petitioner asserted this claim on appeal from the denial of his 27.26 motion. See generally, Resp.Exh. H-2, pp. 6-7. The Missouri Court of Appeals concluded that there was insufficient evidence to support the claim and affirmed the denial of relief based on that claim. McDonald v. State, 758 S.W.2d at 107. Petitioner does not challenge the Missouri courts' finding of insufficient evidence, and he is precluded from offering additional evidence to this Court in support of his claim. Laws v. Armontrout, 834 F.2d 1401, 1413 (8th Cir.1987).
Petitioner must have presented the state courts with precisely the same factual underpinnings of his federal constitutional argument that the petitioner wishes to use to support his claim in his federal habeas corpus petition. Laws v. Armontrout, 834 F.2d at 1413. Reviewing those facts presented to the state courts, this Court concludes, as the Missouri courts did, that there is insufficient support for this claim. Consequently, all relief shall be denied on the claim.
Petitioner asserts in his eighteenth claim under Ground IX that his trial counsel was ineffective in that she did not object to the prosecutions failure to secure a proper warrant for petitioner's arrest. Amended Petition, ¶ 105. Petitioner did assert this claim at paragraph 26 of his 27.26 motion, claiming that the arrest warrant was not supported by probable cause. Further, petitioner did pursue this claim on appeal from the denial of his 27.26 motion, arguing that the arrest warrant was not signed by a judge. See Resp.Exh. H-2, pp. 6-7. On appeal, the Missouri Court of Appeals found that this allegation was "not supported by the evidence and will not be addressed." McDonald v. State, 758 S.W.2d at 107. Respondent argues that this claim is without merit and would have this Court defer to the Missouri Court of Appeals' findings on this issue.
As indicated with regard to claim seventeen, this Court is limited to considering the factual basis presented to the state courts. The factual underpinnings of petitioner's federal constitutional argument must have been presented to the state courts before this Court will consider them. Laws v. Armontrout, 834 F.2d at 1413. Reviewing those facts presented to the state courts, this Court concludes, as the Missouri courts did, that there is insufficient evidence to support a finding that the arresting officers lacked a proper warrant under which to take petitioner into custody. Concededly, the actual "Warrant For Arrest," issued June 11, 1981, did not bear the signature of either the Clerk or a Judge. However, on that same day, Circuit Judge Thomas F. McGuire issued an order directing that a bench warrant issue for the arrest of petitioner. Consequently, this Court rejects petitioner's assertion that no judge ever authorized petitioner's arrest. Therefore, all relief shall be denied on this claim.
In claim nineteen under Ground IX, petitioner claims that his trial counsel was ineffective in that she failed to advise petitioner of his right to proceed pro se. Amended Petition, ¶ 106. This claim was asserted at paragraph 27 of petitioner's 27.26 motion, it was rejected by the Missouri court, Resp.Exh.F, pp. 12-22, and petitioner declined to assert it on appeal of the denial of the 27.26 motion. See generally, Resp.Exh. H-1 & H-2. Petitioner's failure to pursue *1255 the claim on appeal constitutes a procedural default which, absent a showing of cause and prejudice, will preclude this Court's review. Stokes, 893 F.2d at 155. Petitioner fails to make such a showing of cause and prejudice and fails to show how this claim might support a finding of his probable innocence. Therefore, relief based on this claim will be denied.
In claim twenty under Ground IX, petitioner alleges that his trial counsel should have requested that the trial court give the jury a cautionary instruction concerning the use of co-defendant Blue's testimony. This claim was asserted in petitioner's 27.26 motion. Resp.Exh. F, p. 37 at ¶ 28. The Missouri Court of Appeals considered this issue on appeal from the denial of the 27.26 motion, and concluded that it was "not supported by the evidence." McDonald, 758 S.W.2d at 107.
The cautionary instruction on the "testimony of a drug addict and of an accomplice," which petitioner contends should have been requested, are not available in the Missouri Pattern Criminal Jury Instructions. See State v. Tyler, 556 S.W.2d 473, 476 (Mo.App. 1977); State v. Lang, 515 S.W.2d 507, 510-11 (Mo.1974). Missouri criminal instructions include only one instruction on the weight and value of the evidence and the believability of witnesses. See MAI-CR2d 2.01.[15] Further, the "Notes On Use" following MAI-CR2d 2.01, state that "no other or additional instruction may be given on the believability of witnesses, or the effect, weight or value of their testimony." Id.; Williams v. State, 712 S.W.2d 404, 407 (Mo.App.1986). The Court is not persuaded that the cautionary instruction petitioner seeks are permissible under Missouri law or constitutionally required. Accordingly, this Court does not believe that petitioner's attorney afforded petitioner ineffective representation in not requesting these cautionary jury instructions. Accordingly, all relief on claim twenty of Ground IX will be denied.
In claim twenty-one, petitioner argues that his trial counsel "failed to preserve the record regarding or object to the exclusion of new jury panel members on the basis of their race, and failed to request the court to order the prosecution to offer its reasons, if any existed, for exercising its preemptory strikes to remove blacks from the jury panel." Amended Petition, ¶ 108. This claim was asserted at paragraph 27 of petitioner's 27.26 motion, it was rejected by the Missouri court, Resp.Exh. F, pp. 12-22, and petitioner declined to assert it on appeal from the denial of the 27.26 motion. See generally, Resp. Exhs. H-1 & H-2. Petitioner's failure to pursue the claim on appeal constitutes a procedural default which, absent a showing of cause and prejudice, will preclude this Court's review. Stokes, 893 F.2d at 155. Petitioner fails to make such a showing of cause and prejudice. Petitioner also fails to demonstrate his actual innocence. Therefore, relief based on this claim will be denied.
Finally, in claim twenty-two under Ground IX, petitioner claims that he was denied the effective assistance of counsel in that his trial counsel "failed to investigate and present evidence to support [petitioner's] motion for a psychiatric examination of witness Blue." Amended Petition, ¶ 109. This claim was asserted at paragraph 32 of petitioner's amendments to his 27.26 motion, see Resp. Exh. F, p. 28, it was rejected by the Missouri court, Resp.Exh. F, pp. 12-22, and petitioner declined to assert it on appeal from the denial of his 27.26 motion. See generally, Resp. Exhs. H-1 & H-2. Petitioner's failure to pursue the claim on appeal constitutes a procedural default which, absent a showing of cause and prejudice, will preclude this Court's review. Stokes, 893 F.2d at 155. Further, petitioner is unable to make such a showing of cause and prejudice because Missouri law does not provide for a psychiatric examination of a witness. See, e.g., State v. Sinner, 772 S.W.2d 719, 720-21 (Mo.App. 1989) (physical exam); State v. Clark, 711 S.W.2d 885, 888 (Mo.App.1986) (mental exam). Finally, the record does not support a finding of petitioner's probable innocence. *1256 Therefore, relief based on this claim will be denied.
Additionally, with regard to all twenty-two of petitioner's ineffective assistance of counsel claims, the Court notes that, assuming arguendo that counsel's performance was defective, petitioner cannot satisfy the second prong of the Strickland test, specifically, that the outcome of his trial would have been different had it not been for counsel's ineffective representation, because the evidence of his guilt is substantial. The evidence of petitioner's guilt is so substantial that this Court does not believe the actions of counsel were such that "but for" the alleged inadequate representation, the jury would have acquitted petitioner. There were at least two eyewitness identifications, the testimony of an accomplice, bloody-clothing belonging to the petitioner, evidence that the victim had shot his assailant several times, and evidence that petitioner had been admitted to the VA Hospital suffering from multiple gunshot wounds. It is certainly conceivable that a jury could have found defendant guilty beyond a reasonable doubt. Therefore, on this basis too, all relief based on the claims asserted in Ground IX will be denied.

J. GROUND X: Instruction on Mitigating Circumstances
In his next ground for relief, petitioner claims that his Eighth and Fourteenth Amendment rights were violated by an instruction requiring the jury to "first unanimously agree that a mitigating circumstance or circumstances existed" before weighing any mitigating evidence against the aggravating circumstance or circumstances. Amended Petition, ¶ 111. Initially, the Court notes that it does not appear that this claim has ever been presented to the Missouri courts. See Petitioner's 27.26 Motion & Amendments, Resp.Exh. F, pp. 24-39; Petitioner's Brief on Appeal to Missouri Supreme Court, Resp.Exh. C. In light of petitioner's failure to present this claim to the state courts this Court is barred from considering the merits of this claim, absent a showing of cause and prejudice, Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or a demonstration that the error complained of resulted in petitioner's conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986).
To overcome this procedural bar, petitioner asserts that the "cause" factor of Wainwright, 433 U.S. at 87, 97 S.Ct. at 2506-07, is satisfied because the Supreme Court's holding in Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), upon which he relies for support of this ground, constitutes a novel constitutional principle. Amended Petition, ¶ 147. Petitioner's Mills claim is governed by Stokes v. Armontrout, 893 F.2d 152 (8th Cir.1989). In Stokes, the petitioner sought to pursue in his federal habeas petition a Mills challenge to a jury instruction used to obtain his conviction, even though he had not raised that Mills claim in state court. Similar to this case, the petitioner in Stokes argued that the "cause" factor of Wainwright, 433 U.S. at 87, 97 S.Ct. at 2506-07, was satisfied because the Supreme Court's holding in Mills constituted a novel constitutional principle. See Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) (holding that recently announced rule of law involving "a constitutional claim ... so novel that its legal basis [was] not reasonably available to counsel" satisfies Wainwright's "cause" requirement). The Eighth Circuit, however, relying on Smith v. Armontrout, 888 F.2d 530 (8th Cir.1989), rejected the contention that Mills is the product of a constitutionally novel principle.
If it be suggested that the point is a novel one ... the Mills opinion itself stands as refutation. The case is written as a standard application of the rule that juries must be free to consider any and all evidence as a mitigating factor. This has been a familiar feature of the legal landscape since 1978, when Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) was decided.
Stokes, 893 F.2d at 155 (quoting Smith, 888 F.2d at 545). Because petitioner articulates no justification, other than the novelty concept rejected in Stokes and Smith, for not raising his Mills challenge in the state courts, federal habeas review of this claim is procedurally barred under Wainwright.
*1257 Consequently, with regard to this ground, the Court need only determine whether petitioner can overcome the procedural bar under the Murray probable innocence exception. Murray, 477 U.S. at 496, 106 S.Ct. at 2649-50. This exception applies by analogy to the penalty phase of the trial where the question becomes: "if the jury had been told, in compliance with Mills, that any mitigating circumstance, even if not unanimously found by the jury, could be weighed, would it probably have fixed the punishment at life in prison?" Smith, 888 F.2d at 545; accord Stokes, 893 F.2d at 156. After reviewing the record in this case this Court does not believe that the only possible answer to this question is no. Petitioner's counsel offered mitigating evidence during both the guilt and penalty phases of the trial. For example, counsel adduced evidence pertaining to petitioner's family relationships, his service in Vietnam and his mental health. Presuming this evidence was offered in mitigation of petitioner's conduct, the jury still found at least one aggravating circumstance, see Resp.Exh. B, p. 210, which justified the imposition of the death penalty. The Court has no difficulty concluding that the jury would have returned the death penalty even had they been instructed in the manner petitioner claims Mills requires.
As respondent argues, this claim is also barred under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Petitioner appears to concede that the rule he seeks to apply is "new" within the meaning of Teague, see Amended Petition, ¶ 147, thus presumably petitioner is arguing that an exception to the Teague bar exists. The Eighth Circuit has not expressly addressed the issue of retroactive application of Mills as an exception to the Teague bar. Rather, the Court of Appeals noted the division among the circuits, compare Williams v. Dixon, 961 F.2d 448, 459 (4th Cir.1992) (rules announced in Mills and McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), "are bedrock procedural rules falling within the second exception to the Teague rule"), cert. denied, ___ U.S. ___, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992) with Wilcher v. Hargett, 978 F.2d 872, 878 (5th Cir.1992) (holding none of the exceptions to the Teague bar apply), cert. denied, ___ U.S. ___, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993), and expressly passed on the issue. Nave v. Delo, 22 F.3d 802, 815 n. 11 (8th Cir.1994).
As in Nave, this Court need not reach the Mills issue due to the procedural bar. Nevertheless, in light of the serious nature of the penalty imposed in this case, and the fact that the Court ultimately finds this ground to be without merit, the Court will address the merits of this claim. See, e.g., Guinan, 909 F.2d at 1227. Petitioner claims that the challenged instruction violates Mills by requiring the jurors to find each mitigating circumstance unanimously. The relevant part of jury instruction number thirty charged:
If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.
Jury instruction number thirty-one charged:
Even if you decide that a sufficient mitigating circumstance or circumstances do not exist which outweigh the aggravating circumstance or circumstances found to exist, you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you.
In contrast, the jury instructions in Mills mandated that jurors unanimously agree upon a mitigating circumstance or circumstances. The instructions submitted here did not require the jurors to unanimously agree on any particular mitigating factor, as in Mills, but rather, instructed the jurors that they must unanimously agree that the mitigating factors they found outweigh the aggravating factors before a life sentence is mandated. In considering a penalty of death this Court does not believe that there was a substantial probability that reasonable jurors thought, in the words of Mills, that "they were precluded from considering any mitigating *1258 evidence unless all 12 jurors agreed on the existence of a particular such circumstance." Mills, 486 U.S. at 384, 108 S.Ct. at 1870. The challenged jury instructions do not violate Mills and are not unconstitutional. See, e.g., Griffin v. Delo, 33 F.3d 895, 906-07 (8th Cir.1994). Therefore all relief on Ground X will be denied.

K. GROUND XI: Statutory Scheme
In this ground, petitioner alleges that the "statutory scheme governing the application of the death penalty in Missouri" violates the Fifth, Eighth and Fourteenth Amendments. Amended Petition, ¶ 112. In support of this ground petitioner claims that the death penalty is imposed in an arbitrary and capricious manner. Amended Petition, ¶ 114. This claim has never been presented to the Missouri courts. See Petitioner's 27.26 Motion & Amendments, Resp.Exh. F, pp. 24-39; Petitioner's Brief on Appeal to Missouri Supreme Court, Resp.Exh. C. In light of petitioner's failure to present this claim to the state courts, this Court is barred from considering the merits of this claim, absent a showing of cause and prejudice, Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or a demonstration that the error complained of resulted in petitioner's conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986).
In an attempt to overcome this bar, petitioner asserts that this ground is "novel" and that presentation to a state court would have been futile. Amended petition, ¶ 147. It is petitioner's contention that the prosecutor possesses unreviewable discretion to decide whether to seek the death penalty against any particular defendant, thereby denying the defendant his due process and equal protection rights under the Fifth and Fourteenth Amendments. Petitioner also alleges that this application of the death penalty statute violates his Eighth Amendment rights.
This Court is not persuaded by petitioner's argument. In essence, petitioner is attacking the selectivity of enforcement of the statute. However, as was stated by the United States Supreme Court, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Therefore, we conclude that the selective enforcement of Missouri's capital punishment statute, without more, does not deny petitioner either due process or equal protection of the laws in violation of the Fifth or Fourteenth Amendments.
Petitioner also contends that the application of the statute constitute cruel and unusual punishment in violation of the Eighth Amendment. This argument is presumably based on petitioner's assertion that because the prosecutor has unreviewable discretion to prosecute under the statute, the resulting sentence constitutes cruel and unusual punishment. First, the Court notes that the prosecutor's discretion in Missouri is not unreviewable, despite petitioner's assertion to the contrary. Rather, by statute, the Missouri Supreme Court automatically reviews every death sentence imposed by Missouri courts. See R.S.Mo. § 565.035.
Second, a similar argument was offered in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), where the appellant argued that the state had unfettered authority to select those persons whom it wished to prosecute for a capital offense and to plea bargain with them. This, according to the petitioner, constituted the arbitrariness and capriciousness condemned by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Supreme Court rejected this argument. Gregg v. Georgia, 428 U.S. at 199, 96 S.Ct. at 2937; Proffitt v. Florida, 428 U.S. 242, 254, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 274, 96 S.Ct. 2950, 2957, 49 L.Ed.2d 929 (1976). As Justice White stated in his concurring opinion in Gregg, "[a]bsent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decisions by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts." Gregg, 428 U.S. at 225, 96 S.Ct. at 2949 (White, J., concurring). Similarly, based on the holding and rationale of Gregg *1259 and its progeny, this Court rejects petitioner's argument here. All relief on Ground XI will be denied.

L. GROUND XII: Motions to Suppress Evidence
In his next ground, petitioner alleges that his rights under the Fifth and Fourteenth Amendments were violated when the trial court failed to grant his motion to suppress evidence allegedly obtained improperly. This ground contains two claims. First, petitioner argues that the identification testimony of Archie White and Stanley Hunter should have been suppressed because it was the product of an improper viewing of petitioner by those witnesses.[16] Amended Petition, ¶ 117. Petitioner filed a "Motion to Suppress Identification" with regard to this claim. See Resp.Exh. B, pp. 602-03. The motion was argued before the trial court, prior to trial, Resp.Exh. A-1, pp. 65-194, and denied. Resp.Exh. B, p. 348. Petitioner asserted this claim in his motion for a new trial. Resp.Exh. B, p. 163 at ¶ 21. That motion was denied. Resp.Exh. B, p. 91. On direct appeal from his conviction, however, petitioner did not include this claim. See generally Resp.Exh. C. Petitioner's failure to pursue this claim on direct appeal constitutes a procedural default that gives rise to an adequate and independent state procedural bar to review. See, e.g., State v. Gilmore, 617 S.W.2d 581, 582 (Mo.App.1981).
In light of the state court bar to review, petitioner is entitled to federal habeas review of this claim only if he can show cause and prejudice, Wainwright v. Sykes, 433 U.S. at 87, 97 S.Ct. at 2506-07, or that the error complained of resulted in petitioner's conviction despite his probable innocence. Murray v. Carrier, 477 U.S. at 496, 106 S.Ct. at 2649-50. Petitioner shows no such cause and prejudice. Further, the record does not support a conclusion that petitioner is probably innocent of the crime charged. Therefore, all relief on this claim will be denied.
In his second claim under Ground XII, petitioner claims that his Fourth Amendment rights were violated when the state improperly seized physical evidence. Amended Petition, ¶ 118. Petitioner filed a motion to suppress that evidence. Resp.Exh. B, pp. 600-01. The trial court heard evidence on this motion, see Resp.Exh. A-1, pp. 65-194, and ultimately denied the motion. Resp. Exh. B, p. 348. This claim was not presented in petitioner's motion for a new trial or on direct appeal. See generally, Resp.Exh. B, pp. 153-201 and Resp.Exh. C.
As with claim one under this ground, petitioner faces an adequate and independent state procedural bar to review. See, e.g., State v. Gilmore, 617 S.W.2d 581, 582 (Mo. App.1981). In light of this state court bar, petitioner is not entitled to habeas review of this claim unless he can show cause and prejudice, Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or that the error complained of resulted in his conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986). Petitioner is unable to show any cause or prejudice here, and the record does not support a finding of petitioner's probable innocence, thus any relief on this claim will be denied.
Further, this Court does not deem this to be a cognizable claim, as petitioner was afforded an opportunity to fully litigate his Fourth Amendment claim and actually did so. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976). Therefore, having found that petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment issues, this Court need not proceed further on this claim, and all relief on this claim of Ground XII will be denied.

*1260 M. GROUND XIII: Refusal of the Trial Court To Compel Prosecution to Provide Defense With All Favorable Evidence
In Ground XIII, petitioner alleges that he was denied his constitutional rights when the trial court failed to compel the prosecution to provide petitioner with all favorable evidence. For this Court to consider petitioner's ground, petitioner must provide the state court with a fair opportunity to consider both the factual and legal basis of his claim. See, e.g., Guinan v. Armontrout, 909 F.2d 1224, 1232 (8th Cir.1990). Here petitioner did not assert this claim in his motion for a new trial, see Resp.Exh. B, p. 153-201, nor did petitioner assert this claim in any of his 27.26 pleadings. See Resp.Exh. F, pp. 23-39. Petitioner also never asserted this claim on appeal from the denial of his 27.26 motion, see Resp.Exhs. H-1 & H-2, or on direct appeal from his sentence and conviction. See Resp.Exh. C. Consequently, petitioner is not entitled to habeas review of this ground unless he can show cause and prejudice, Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or that the error complained of resulted in his conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986). The record lacks any evidence of cause or prejudice, and, as indicated above, the record does not a support a finding of petitioner's probable innocence. Thus this Court will deny all relief based on this ground.

N. GROUND XIV: Death Qualifying of Jury
During voir dire the state prosecutor inquired of the venire-persons, whether, after hearing all the evidence in the case, they could consider all sentencing alternatives, including imposition of the death penalty. Petitioner contends that the trial court did not "intercede in and stop the prosecution's death qualifying of the jury." Amended Petition, ¶ 122. Petitioner also suggests that his trial counsel was ineffective because she did not "intercede in or stop the practice of its own initiative." Amended Petition, ¶ 124.
In his Sixth Amendment fair cross-section claim, petitioner alleges that by excluding from the jury those individuals opposed to the death penalty, the jury ultimately sworn did not reflect a fair cross-section of the community. This claim was presented to the trial court in petitioner's motion for a new trial. Resp.Exh. B, p. 167 at ¶ 30. That motion was denied. Resp.Exh. B, p. 91. Petitioner failed to assert this claim on direct appeal. See generally Resp.Exh. C. Petitioner's failure to appeal the denial of relief based on this claim gives rise to a procedural bar to this Court's review. Petitioner can overcome this procedural bar only upon a showing of cause and prejudice, Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or that the error complained of resulted in his conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986). The record lacks any evidence of cause or prejudice, and thus this Court will deny all relief based on this claim.
Similarly, petitioner's claim of ineffective assistance of counsel was not asserted in any of his 27.26 pleadings. See Resp.Exh. F, pp. 23-39. Petitioner also never asserted this claim on appeal from the denial of his 27.26 motion. See Resp.Exhs. H-1 & H-2. Petitioner's failure to present this claim to the state court gives rise to an adequate and independent state procedural bar to review. Stokes v. Armontrout, 893 F.2d 152, 153 (8th Cir.1989). Petitioner fails to show cause and prejudice for this default, further, for the reasons set forth above, the record clearly does not support a finding of petitioner's probable innocence. Consequently, all relief based on this claim will be denied.
Further, the Court finds that both claims of Ground XIV are without merit. In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the *1261 death penalty or expressed conscientious or religious scruples against its infliction." Witherspoon, 391 U.S. at 521-22, 88 S.Ct. at 1776-77. In a footnote, the Court explained that:
a prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him. The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.
Id. at 522 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis original).
In light of Witherspoon, if death qualification of a jury is constitutionally permissible, neither the trial court nor counsel can be faulted for failing to take any action to prevent such qualification. The Missouri courts made similar findings, and those findings of fact were supported by the record. Consequently, those findings are entitled to a presumption of correctness and petitioner has not satisfied the performance prong under Strickland. Consequently, all relief on this ground will be denied.

O. GROUND XV: Failure to Advise Petitioner That The Jury Would Be Instructed Regarding Proper Use of Evidence Regarding Prior Claims and Convictions
In Ground XV petitioner argues that his constitutional rights were violated when both the trial court and his trial counsel failed to advise petitioner that the jury would be instructed as to the proper use of petitioner's prior convictions. Amended Petition, ¶¶s 127-128. Petitioner did not assert this claim in his motion for a new trial, see Resp. Exh. B, p. 153-201, nor did petitioner assert this claim in any of his 27.26 pleadings. See Resp.Exh. F, pp. 23-39. Petitioner also never asserted this claim on appeal from the denial of his 27.26 motion, see Resp.Exhs. H-1 & H-2, or on direct appeal from his sentence and conviction. See Resp.Exh. C. Consequently, petitioner is not entitled to habeas review of this ground unless he can show cause and prejudice, Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or that the error complained of resulted in his conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986). The record lacks any evidence of cause and prejudice, further, for the reasons set forth above, the record clearly does not support a finding of petitioner's probable innocence. Therefore, this Court will deny all relief based on this ground.

P. GROUND XVI: Improper Jury Panel
In Ground XVI, petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated in the selection of the jury panel. Amended Petition, ¶ 132. Petitioner asserted this ground in his post-conviction motion, Resp.Exh. F, p. 37 at ¶ 24, however, all relief sought pursuant to that motion was denied. Resp.Exh. F, pp. 12-22. Petitioner did not appeal the denial of this ground. See generally, Resp.Exhs. H-1 & H-2. Petitioner's failure to appeal constitutes a procedural default which gives rise to an adequate and independent state procedural bar to federal review. See, e.g., Stokes, 893 F.2d at 156. Consequently, petitioner is not entitled to habeas review of this ground unless he can show cause and prejudice, Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or that the error complained of resulted in his conviction despite his probable innocence. Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649-50, 91 L.Ed.2d 397 (1986). The record lacks any evidence of cause and prejudice or probable innocence. Therefore, the Court will deny all relief based on this ground.

Q. GROUND XVII: Failure To Sustain Objection To Improper Argument By Prosecution Concerning Juror Responsibility
In Ground XVII, petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court *1262 failed to sustain petitioner's objection or otherwise prevent the prosecutor from arguing about the "fact, manner, extent, and dependability of review that a death sentence would be accorded." Amended Petition, ¶ 137. Petitioner asserted this ground on direct appeal. See, e.g., Resp.Exh. C, p. 20. The Missouri Supreme Court rejected this ground, finding "brief remarks regarding the possibility of sentence reviews as insufficient basis for reversal." State v. McDonald, 661 S.W.2d at 506, citing State v. Newlon, 627 S.W.2d 606, 617-19 (Mo. banc), cert. denied, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149, reh'g denied, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982). Petitioner's conviction and sentence became final following denial of certiorari by the United States Supreme Court on April 1, 1985. McDonald v. Missouri, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985).
This ground is subject to the same analysis afforded Ground VII, thus it will not be repeated here. For the reasons set forth above for the denial of all relief based on Ground VII, all relief on this ground will also be denied. As noted above, this Court finds nothing "fundamentally unfair" about petitioner's sentencing hearing.

R. GROUND XVIII: Use Of Preemptory Strikes to Remove Black Jurors
Finally, in Ground XVIII, petitioner alleges that his Fifth and Fourteenth Amendment rights were violated by permitting the prosecution to use its preemptory strikes to remove "a disproportionately large number of blacks from the jury panel." Amended Petition, ¶ 142. Petitioner presented this claim to the Missouri courts via his 27.26 motion. Resp.Exh. F, p. 29 at ¶ 17. Further, contrary to respondent's assertion, petitioner did advance this ground on appeal from the denial of his 27.26 motion. See Resp.Exh. H-1, p. 14.
The Court construes this ground as a Batson challenge to the jury composition. In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court confirmed that a state prosecutor violates the equal protection clause of the Fourteenth Amendment if he or she utilizes peremptory challenges to strike venire members from the jury on the basis of race. Id. at 86, 106 S.Ct. at 1717. In Batson, the Supreme Court explained that to establish a prima facie case of discrimination:
the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude venire-men from the petit jury on account of their race.
Id. at 96, 106 S.Ct. at 1723 (citations omitted). "After a defendant establishes a prima facie case, the burden then shifts to the government to `articulate a neutral explanation related to the particular case to be tried.' `The prosecutor must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges.'" United States v. Wilson, 884 F.2d 1121, 1124 (8th Cir.1989), quoting Batson, 476 U.S. at 98 & n. 20, 106 S.Ct. at 1724 & n. 21.
As the Missouri Court of Appeals indicated, "[t]he rule in Batson is to be applied retroactively, but only to those cases not yet final when Batson was decided." McDonald v. State, 758 S.W.2d 101, 107 (Mo.App.1988), quoting Griffith v. Kentucky, 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). Here, petitioner's case was final on April 1, 1985, when the United States Supreme Court declined to grant certiorari, well before 1987, when Batson was decided. Petitioner's reliance on Batson therefore is of no benefit. The Court finds this claim to be without merit and thus all relief based on this ground will be denied.
Accordingly, in accordance with the foregoing memorandum,
*1263 IT IS HEREBY ORDERED that the December 1, 1992 order of the Honorable Clyde S. Cahill, granting petitioner's motion for an evidentiary hearing, is set aside, vacated and held for naught.

JUDGMENT
Pursuant to the memorandum and order entered herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that the amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.
IT IS FURTHER ORDERED that petitioner is hereby granted a certificate of probable cause to appeal.
IT IS FURTHER ORDERED that any prior order of this Court, to the extent that it stays the execution of the death penalty on petitioner, is hereby vacated and replaced by the next following order.
IT IS FURTHER ORDERED that the execution of the death penalty on petitioner Samuel Lee McDonald is hereby stayed for a period of thirty (30) days from the date of this judgment. Petitioner must obtain any further stay of execution from the United States Court of Appeals for the Eighth Circuit, the United States Supreme Court, or a Missouri state court.
IT IS FURTHER ORDERED that the Clerk of this Court shall give immediate notice of this judgment, both by telephone and by the mailing of a copy thereof, to: Paul K. Delo, the warden of the Potosi Correctional Center at Mineral Point, Missouri; Jeremiah ("Jay") Nixon, Attorney General of the State of Missouri; Mel Carnahan, Governor of the State of Missouri; and the Missouri Supreme Court.
NOTES
[1] Rule 27.26 was repealed effective January 1, 1988. Post-conviction relief is now available under Missouri Supreme Court Rule 29.15.
[2] Petitioner asserts seven grounds on appeal: (1) The 27.26 court erred in not making finds on all issues presented in the motion; (2) and (3) Petitioner was denied constitutional protections when he was not afforded necessary expert assistance; (4) Trial court erred in refusing to consider mitigation evidence; (5) Trial court erred in failing to investigate petitioner's mental defense; (6) Improper closing argument by the state; and (7) Improper use of peremptory challenges by the state.
[3] The Fifth Amendment provides in relevant part that no person shall be "deprived of life, liberty, or property, without due process of law...." U.S. CONST. amend. V.
[4] The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII.
[5] The Fourteenth Amendment provides in relevant part that "nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV.
[6] The record reflects some confusion as to whether there were four or five motions for appointment of a psychiatrist. See Resp.Exh. A-1, p. 246. The legal file submitted as part of the record in this case contains only four such motions. Whether there were four or five such motions, all parties agree that no psychiatrist was appointed to examine petitioner prior to trial.
[7] Presumably, petitioner's Eighth Amendment argument is that his death sentence is unconstitutional because the jury was unable to fully consider and give effect to the mitigating evidence of his alleged mental defect, which he would have offered as the basis for a sentence less than death.
[8] To the extent petitioner asserts an Eighth Amendment aspect to these claims, such an Eighth Amendment argument is barred by Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). See infra.
[9] Again, based on Teague, the Court finds no cognizable Eighth Amendment claim.
[10] Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).
[11] In Caldwell, the Supreme Court concluded that a death sentence imposed by a jury which has been led to believe that the ultimate responsibility of determining the appropriateness of the sentence lies elsewhere, is constitutionally impermissible. Caldwell, 472 U.S. at 328-30, 105 S.Ct. at 2639-40.
[12] Petitioner also alleges an Eighth Amendment deprivation. However, for the reasons indicated above, the Eighth Amendment claim is Teague barred.
[13] Petitioner did not advance this exact claim on appeal. Rather, in a pro se brief, petitioner asserted that his trial counsel was ineffective for failing to investigate and introduce evidence regarding discrepancies between petitioner's blood type and the blood type found at the crime scene. See McDonald v. State, 758 S.W.2d at 107. With regard to the blood obtained from the seized clothing and the automobile, petitioner appears to have abandoned those claims, which creates an adequate and independent bar to federal habeas review, absent a showing of cause and prejudice. Gilmore v. Armontrout, 861 F.2d 1061, 1065 (8th Cir.1988), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). Petitioner makes no cause or prejudice showing.
[14] The Missouri Court of Appeals and this Court presume that petitioner abandoned his claim that counsel was ineffective in that she failed to adduce evidence that blood found on the clothing recovered from the sewer and the automobile did not match petitioner's.
[15] This instruction was replaced, effective November 1, 1987, by MAI-3d 302.01, however, the two versions are essentially identical.
[16] This claim was also asserted in the context of an ineffective assistance of counsel claim under Ground IX.